**Beth R. DEATON,**

v.

**Harriet Hammond CROSS, et al.**

**No. Civ.01–202.**

United States District Court, D. Maryland.

Feb. 5, 2002.

Peter A. Holland, Law Office, Annapolis, MD, for Beth R. Deaton.

John Snowden Stanley, Jr., Semmes Bowen and Semmes PC, Baltimore, MD, for Metropolitan Life Ins. Company.

Juanita J. Cross, Olympia, WA, pro se.

Christopher J. Drewniak, Ryan and Drewniak, John Joseph Ryan, Law Office, Annapolis, MD, for defendants.

## MEMORANDUM OPINION

SMALKIN, Chief Judge.

■ This matter is before the Court on the cross-motions of the parties for summary judgment in respect to an ERISA-governed life insurance policy that was issued to the late Mr. James Otto Cross, at the time of his death an employee of Bell Atlantic, and, as such, a participant in Bell Atlantic's employee life insurance plan, administered by the Metropolitan Life Insurance Company (MetLife), which commenced this interpleader action. There is another party in interest (other than the movants), *i.e.*, Juanita Cross, the mother and personal representative of Mr. Cross, who urges that the money not go to the Harriet Hammond claimants, but she does not make any claim of right to any of the benefits under the policy (nor could she under the facts of the case), and, thus, she has no justiciable claim before this Court. The determinative issues have been adequately briefed, and no oral argument is needed. Local Rule 105.6 (D.Md.2001).

Mr. Cross was married to Harriet Hammond Cross, one of the cross-movants in this case, on November 5, 1983, and this marriage produced four children, now all minors. In June, 1997, the parties entered into a separation and property settlement agreement recorded in the Circuit Court for Anne Arundel County which, among other things, provided, in ¶ 28, "Furthermore, Husband hereby agrees to name the

children of the parties as the irrevocable beneficiaries of any policy of [life] insurance available to him through his employer until such time as the youngest child of the parties attains the age of twenty two (22) years." Subsequent to the divorce of Mr. Cross and Harriet Hammond Cross, Mr. Cross became an employee of Bell Atlantic and enrolled as such in its life insurance plan, regulated under ERISA and administered by MetLife under Group Policy No. 29270. On a form duly provided by Met-Life, Mr. Cross designed the beneficiary of that life insurance plan as Beth R. Deaton. There is no record that MetLife was ever furnished, prior to Mr. Cross's death, with a copy of the separation agreement (also referred to herein as "domestic relations order" or "order").

This case is governed by the provisions of ERISA, which preempt state law. *Met. Life Ins. Co. v. Pettit,* 164 F.3d 857 (4th Cir.1998). Thus, no state law claim will be considered by the Court. In some circumstances, ERISA overrides a plan participant's beneficiary designation in favor of an "alternate payee" under a domestic relations order, but only if such an order meets the criteria for a "Qualifying Domestic Relations Order" (QDRO), the statutory requirements for which are set forth in 29 U.S.C. § 1056(d)(3) (1999). The Fourth Circuit, by using the term "must include" in reference to the elements of a QDRO enumerated by statute, has implied that these all are necessary constituents of a QDRO. *Id.* at 863 n. 4.

In order to qualify as a QDRO by statute, a domestic relations order must, *inter alia,* "clearly specify" the name and last known mailing address of any payee covered by the order, the amount or percentage of benefits to be paid by the plan to each alternate payee, or the manner in which the amount or percentage is to be determined, the number of payments or period to which such order applies. A

QDRO must also specify "each plan to which such order applies." 29 U.S.C. § 1056(d)(3)(C).

■ It is obvious that the domestic relations order in this case was not a QDRO, despite defendants' attempts to qualify it as such by blurring a number of the black-letter requirements of a QDRO.

Although the order here set forth the names of the participant's four children, it did not specify the percentage or method of distribution of life insurance proceeds to each child. For example, it did not state whether, if any child became deceased prior to age 22, the benefits attributable to that child would be distributed *per stirpes,* or whether his or her share would become subject to *per capita* distribution among the other living children under 22. Furthermore, the order here did not provide the mailing addresses of the decedent or that of the children, and the simple statement in the order that Harriet Hammond Cross intended to move herself and her children to Florida (¶ 23) is itself insufficient to satisfy the statutory requirement, as would be the provision of a Maryland attorney's name and address. Although the Court recognizes that legislative history maintains that failure to put the last known mailing address of an alternate payee in a QDRO should not be the **sole** basis for rejecting a plan as qualifying, *see* s. REP. NO. 98–575, at 20 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2566, the plan administrator must still, in such cases, have some reasonable means of ascertaining the address independent of the QDRO. It is arguable that, based on its group health care records, the plan administrator could have combed through records or other plans it administered on behalf of Mr. Cross to discover the address of the former Mrs. Cross and her children, independent of the QDRO. Thus, the Court will not rely on

the absence of mailing addresses in the order as its only fatal flaw.

Nonetheless, other statutory requirements of a QDRO are not satisfied by this order, including the requirement as to the percentages to be paid to each alternative payee and the number of payments or period over which the payments were to be made, as mentioned above.

More to the point, the order in this case clearly fails to name "each plan to which [it] applies." 29 U.S.C. § 1056(d)(3)(C)(iv). At the time the separation agreement was entered, Mr. Cross was not a participant in the Bell Atlantic plan, thereby keeping that plan from being impliedly included in the separation agreement, nor was the Bell Atlantic plan ever designated in any addendum to the parties' separation agreement. Unlike the situation in *Metropolitan Life Ins. Co. v. Wheaton,* 42 F.3d 1080, 1084 (7th Cir.1994), where the plan was not named, but was referred to as "the life insurance which is presently carried through his/her employer," no implied designation of the Bell Atlantic plan was made in this case.

Given the purpose of the QDRO's requirement of "clear" specification of certain facts, including designation of the plan, which exists to eliminate ambiguity, such purpose is not served by the language in this case that simply refers to "any policy of insurance available to him through his employer." For example, had the decedent converted a policy he was carrying at the time of the order to non-group whole life or term insurance before leaving his pre-Bell employment, would that policy be covered? Or, was the intent of the language only to refer to policies available at the decedent's place of employment, *qua* place, at death? Or suppose the decedent was working two jobs. Would policies at each job be covered? It is just to eliminate ambiguities like this

that the statute requires a QDRO to specify clearly the plan to which it refers.

Unlike the order in this case, the divorce papers in the case of *Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415, 422 (6th Cir.1997), relied upon by the Hammond claimants, specifically referred to "insurance through Metropolitan Life Insurance Company, maintained at [husband's] place of employment." In this case, the order simply made a blanket reference to workplace life insurance, not satisfying the statutory requirement of clear plan identification imposed by ERISA in order to eliminate ambiguity, necessary for a domestic relations order to qualify as a QDRO.

The Court realizes that some appellate courts—in an apparent attempt to reach what they regard as a just result despite the statutory language—have virtually ignored the requirement that a QDRO must "clearly specify" the requisite elements. *See, e.g., Stewart v. Thorpe Holding Co. Profit Sharing Plan,* 207 F.3d 1143 (9th Cir.2000). As a trial court, not an appellate court, this Court does not have the franchise to ignore plain statutory language in the interest of reaching a desirable result. In any event this Court finds the panel opinion in *Stewart* unsound and unpersuasive, for the reasons stated in the dissent in *Stewart,* 207 F.3d at 1158–62.

For the foregoing reasons, an Order will be entered separately, granting the motion of Beth R. Deaton for summary judgment, denying the like motion of Harriet Hammond Cross, et al., for summary judgment, awarding judgment in the amount of the plan proceeds, less fees and costs, to Beth R. Deaton, and closing this case. The Court will deny, as moot, "Defendant's Supplemental Response to Plaintiff Beth Deaton's Reply to Defendant's Opposition Memorandum and Motion Pursuant to F.R.C.P. 37(c)," because the Court did not

rely in any way on the specimen documents with which that motion concerns itself in reaching its decision in this case, which, in the Court's judgment, were not required to be disclosed in discovery in the first place, because of their generic nature.