**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0968n.06
Filed: December 14, 2005

**No. 05-1069**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Plaintiff-Appellee, | ) | |
| SHERRON D. MOORE, | ) | O P I N I O N |
| Third Party-Appellee, | ) | |
| v. | ) | |
| KATRINA L. CLARK as Guardian Ad Litem for Kavottis Moore and Kyla Moore, Minors, | ) | |
| Defendant-Appellant. | | |

BEFORE: MERRITT, MARTIN, and COLE, Circuit Judges

**R. GUY COLE, JR., Circuit Judge.** Upon the death of Kevin Moore, his widow and ex-wife both submitted claims under Moore's ERISA-governed life insurance policy. This case arose when the insurance provider, Metropolitan Life Insurance Co. ("MetLife"), filed an interpleader complaint in district court to resolve the conflict. Adopting the report and recommendation of the magistrate judge, the district court entered summary judgment in favor of the widow, Appellee Sherron Moore. Kevin Moore's ex-wife appealed. For the reasons that follow, we **REVERSE** the district court and **REMAND** this case for further proceedings consistent with this opinion.

I.

Kevin Moore and Katrina Clark were divorced in Michigan on December 15, 1995. Moore was ordered to pay child support in the amount of $151 per week for his then-five and three-year-old children, Kyla and Kavottis, until they reached the age of majority. The state court also held that Moore "shall forthwith make all three[1] of his children irrevocable beneficiaries pro rata to the proceeds of any insurance policy presently in force upon his life, and said minor children shall remain the irrevocable beneficiaries to such payment for so long as they are eligible to receive support from Plaintiff [Moore.]" At the time, Moore had a life insurance policy with MetLife in the amount of $50,000 through his employment at General Motors.

Moore remarried in 1999. On December 2, 1999, he designated his wife—Sherron Moore—as the sole beneficiary of his General Motors policy. Kevin Moore died on April 26, 2003. Moore's widow and his ex-wife, on behalf of minors Kyla and Kavottis Moore, filed claims with MetLife under the policy. Metlife filed an interpleader in district court and requested that Clark be appointed Guardian Ad Litem for her two minor children. The district court accepted the interpleader and released MetLife; the court appointed Clark as requested.

Clark and Sherron Moore each filed for summary judgment. A magistrate judge prepared a report and recommendation wherein he concluded that Sherron Moore was entitled to the proceeds of Kevin Moore's insurance policy as a matter of law. The district court adopted the report and

---

[1]Moore only had two children with Clark; the "three" appears to be a clerical mistake. Kevin Moore's son by another marriage, Kevin Moore II, also submitted a claim to MetLife upon his father's death. His claim was without merit, however, and properly dismissed.

recommendation, thereby granting summary judgment in favor of the appellee. Clark filed a motion to set aside or amend the judgment, which the district court denied. Clark filed this appeal *pro se*, having dismissed her attorney.

This case arises under 29 U.S.C. §§ 1001-1461 (collectively "the Employee Retirement Income Security Act of 1974" or "ERISA"). Therefore, the district court had jurisdiction pursuant to 28 U.S.C. § 1331. 28 U.S.C. § 1291 grants us jurisdiction to hear this timely appeal from a final judgment of district court.

II.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We review an appeal from a grant of summary judgment *de novo*. *Metro. Life Ins. v. Pressley*, 82 F.3d 126, 128 (6th Cir. 1996). We find that summary judgment was not appropriate here.

In 1984, Congress amended ERISA to correct what it perceived to be a bias against divorcees—particularly women—resulting from the inalienability of pension plan benefits. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 838 (1988). As of 1984, ERISA requires that "[e]ach pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A). A divorce decree is a qualified domestic relations order ("QDRO") if it meets the various requirements set forth at § 1056(d)(3), such as the specification of the names and addresses of the participants.

The facts of *Metropolitan Life Insurance Co. v. Marsh*, 119 F.3d 415 (6th Cir. 1997), are virtually identical to those at bar, and *Marsh* squarely controls our application of § 1056(d)(3). In reversing the district court, the *Marsh* court held that a divorce decree qualifies as a QDRO as long as it "substantially complies" with the requirements of ERISA. *Id.* at 422. The *Marsh* court declined to "demand literal compliance where Congress' intent has been to give effect to domestic relations orders where it is clear what the decree intended." *Id.*; *see also Tr. of Dir. Guild of America v. Tise*, 234 F.3d 415 (9th Cir. 2000) ("While this result may seem harsh to the designated beneficiary, the fact is that Congress intended this displacement of a plan participant's wishes in some circumstances, in an effort to mitigate the impact of divorce upon children and former spouses."). For instance, although ERISA requires that a QDRO specify "the manner in which [the] amount or percentage is to be determined" to all payees, § 1056(d)(3)(C)(iii), the *Marsh* court held that Michigan's background presumption of equal distribution was sufficient to satisfy this requirement. *Marsh*, 119 F.3d at 422.

The magistrate judge acknowledged that this case "is strikingly similar to that of [*Marsh*]." The judge nevertheless distinguished *Marsh* because, in that case, the divorce decree specifically mentioned the MetLife policy. Yet in the instant case, the decree refers to "any policy of insurance presently in force upon [Kevin Moore's] life." The MetLife policy was in force at the time of the decree; it appeared to be the only life insurance policy held by the decedent. The divorce decree was in substantial compliance with ERISA on this point; indeed, it was in literal compliance. The divorce decree clearly qualifies as a QDRO under *Marsh* and the district court erred in holding otherwise.

The magistrate judge found in the alternative that the divorce decree had been modified by the time of Kevin Moore's death so as to negate any entitlement in his children. In 2001, Moore went on disability and Clark began to receive Social Security disability payments on behalf of their children. In an order dated March 12, 2001, a Genesee County family court noted that Clark and Moore had been divorced "and support was set in the amount of $151.00 per week." Yet in light of Moore's new disability status, the family court held that Moore's "support obligation shall be terminated so long as the Defendant/Mother continues to receive the monthly payments from [Social Security]." The family court added that Moore's "health insurance obligations shall continue," but did not specifically mention the life insurance policy.

Because the divorce decree states that Moore's children "shall remain the irrevocable beneficiaries to such payment *so long as they are eligible to receive support* from [him,]" the magistrate judge reasoned that the 2001 order ended the children's rights under the life insurance policy. The judge identified the family court's failure to mention the life insurance policy as additional evidence that Moore's children were no longer mandatory beneficiaries.

The magistrate judge's conclusion finds insufficient support in the record. According to the family court: "This matter came before the Referee on Plaintiff [Moore's] Motion to credit his support for the amount Defendant [Clark] is now receiving from Social Security Disability on behalf of the Plaintiff." This change in method of support did not obviously revoke support eligibility. The fact that the order "is silent on the issue of the life insurance," as the magistrate judge notes, is equally suggestive that the divorce decree remains untouched in that respect.

Although unapparent from the record, it is conceivable that the decedent's children are entitled to "child's insurance benefits," i.e., continued monthly payments until the children reach the age of majority, because of Moore's disability. *See* 42 U.S.C. § 402(d)(1)(B)(iii). Even so, the family court may have intended that the children retain their claim to Moore's life insurance because, for instance, posthumous disability represents only a portion of the original, monthly benefits. *See id.* at § 402(d)(1)(H)(2). Thus, the family court may have intended that the life insurance proceeds supplement any disability insurance.[2]

Absent a clear indication that the state intended to revoke the beneficiary status of Kevin Moore's two children, the appellee is not entitled to summary judgment. Indeed, it is incumbent upon Sherron Moore to demonstrate the intent of the state to revoke Kyla and Kavottis' otherwise "irrevocable" benefits.

III.

We therefore **REVERSE** the district court judgment and **REMAND** this case for further proceedings consistent with this opinion.

---

[2]Moreover, children can receive child's insurance benefits even if their deceased parent never filed for disability. *Id.* at § 402(d)(1) ("Each child . . . of any individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual . . . shall be entitled to child's insurance benefits for each month . . . ."); *id.* at § § 414(a)-(b) (defining "currently insured individual" as "any individual who had not less than six quarters of coverage during the thirteen-quarter period ending with [] the quarter in which he died"). It is simply unclear what effect, if any, Moore's disability status had on the economic security of his children.