RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0283p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SUN LIFE ASSURANCE COMPANY OF CANADA,

 *Plaintiff-Appellant,*

*v.*

RICHARD E. JACKSON; SIERRA N. JACKSON, individually and as the personal representative on behalf of the Estate of Bruce D. Jackson,

 *Defendants-Appellees.*

No. 17-3120

---

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:14-cv-00041—Walter H. Rice, District Judge.

Argued: November 28, 2017

Decided and Filed: December 13, 2017

Before: GILMAN, SUTTON, and STRANCH, Circuit Judges.

---

## COUNSEL

**ARGUED:** Joshua Bachrach, WILSON ELSER, MOSKOWITZ EDELMAN & DICKER LLP, Philadelphia, Pennsylvania, for Appellant. James D. Brookshire, DUNGAN & LEFEVRE CO., LPA, Troy, Ohio, for Appellee Sierra N. Jackson. Eirik Cheverud, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Joshua Bachrach, WILSON ELSER, MOSKOWITZ EDELMAN & DICKER LLP, Philadelphia, Pennsylvania, for Appellant. James D. Brookshire, Glen R. McMurray, DUNGAN & LEFEVRE CO., LPA, Troy, Ohio, for Appellee Sierra N. Jackson. Stephanie Lewis, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae. Richard E. Jackson, Boise, Idaho, pro se.

---

**OPINION**

---

SUTTON, Circuit Judge.  Bruce Jackson married Bridget Jackson in 1993, and Sierra Jackson, their only child, arrived in 1995.  They divorced in 2006.  In their separation agreement, Bruce and Bridget agreed to maintain any employer-related life insurance policies for the benefit of Sierra until she turned 18 or graduated from high school.  At the time, Bruce had an employer-sponsored life insurance policy that listed his uncle, Richard Jackson, as the sole beneficiary.  Bruce never changed the beneficiary of the policy to Sierra before he died in 2013.  Litigation ensued, and the district court ordered Sun Life to pay the life insurance proceeds to Sierra.  Because the divorce decree suffices as a qualified domestic relations order that "clearly specifies" Sierra as the beneficiary under the Employee Retirement Income Security Act, 29 U.S.C. § 1056(d)(3)(C), we affirm.

I.

In 2003, Bruce Jackson signed up for a life insurance plan sponsored by his employer, Samaritan Health Partners, and governed by the Employee Retirement Income Security Act, better known as ERISA.  Sun Life Assurance Company took over management of Bruce's insurance policy in 2008.  Bruce died in 2013.  At his death, Bruce was insured for $48,000 in basic life insurance and $191,000 in optional life insurance.  The question is whether Richard Jackson, Bruce's uncle, or Sierra Jackson, Bruce's only child, receives the money.

When Bruce signed up for the life insurance policy in 2003, he listed Richard as its sole beneficiary.  When Bruce and Bridget divorced in 2006, their divorce decree incorporated the following provision:

**Article IX: Life Insurance**

In order to secure the obligation of the parties to support their child during her minority, Father and Mother shall maintain, unencumbered, all employer-provided life insurance, now in existence at a reasonable cost, or later acquired at a reasonable cost, naming their minor child as primary beneficiary during her

minority; and the obligation to do so shall continue until she . . . reach(es) the age of eighteen (18) or graduates from high school, whichever occurs last . . . .

R. 29-1 at 29.

Bruce never changed the beneficiary designation in his policy to account for the terms of the divorce decree. At the time of Bruce's death, Sierra was still in high school. Richard and Sierra, as one might expect, made competing claims to Sun Life for the policy's benefits. After learning of both Richard and Sierra's claims, Sun Life decided to pay all of the proceeds to Richard, and litigation involving Sun Life, Richard, and Sierra followed.

Sun Life sought a declaratory judgment that it properly paid the proceeds to Richard. Sierra filed a counterclaim seeking a declaration that she was the lawful beneficiary. The district court issued a decision in Sierra's favor and ordered Sun Life to pay $239,000 plus interest to Sierra. *Sun Life Assurance Co. of Can. v. Jackson*, No. 3:14-cv-41, 2016 WL 4184444, at *14 (S.D. Ohio Aug. 5, 2016). Sun Life appeals.

## II.

In deciding whether Sierra or Richard is entitled to the proceeds of this life insurance policy, we must resolve two questions. One: What is the test for determining whether a qualified domestic relations order permissibly changed the beneficiary of an ERISA-covered life insurance plan? Two: Does this divorce decree satisfy that test?

### A.

*The "clearly specifies" test.* Subject to certain exceptions, ERISA mandates that an employee benefit plan's assets are to be "held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses." 29 U.S.C. § 1103(c)(1). The plan administrator must determine participants and beneficiaries "in accordance with the documents and instruments governing the plan." *Id.* § 1104(a)(1)(D). ERISA preempts "any and all State laws insofar as they . . . relate to any employment benefit plan." *Id.* § 1144(a). Before 1984, this provision arguably would have prevented the enforcement of the court order at issue in this case. *See Hawkins v. Comm'r of Internal Revenue*,

86 F.3d 982, 988 (10th Cir. 1996) (describing the "judicial rift" about preemption of domestic relations orders that existed before 1984).

In 1984, Congress amended ERISA to provide greater protection for spouses and dependents after a divorce. *See* S. Rep. No. 98-575, at 1, 3 (1984); H.R. Rep. No. 98-655, pt. 1, at 1, 30–31 (1984). One such protection was an exemption from ERISA's general preemption provision for "qualified domestic relations orders." 29 U.S.C. § 1144(b)(7). A qualified domestic relations order includes any state "judgment, decree, or order" relating to the provision of "child support, alimony payments, or marital property rights" that recognizes an "alternate payee's right to . . . benefits" and meets a number of other requirements. *Id.* § 1056(d)(3)(B)(i)–(ii).

This case turns on those requirements. Here they are:

A domestic order meets the requirements of this subparagraph only if such order clearly specifies—

**(i)** the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

**(ii)** the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

**(iii)** the number of payments or period to which such order applies, and

**(iv)** each plan to which such order applies.

*Id.* § 1056(d)(3)(C).

In adding this provision to ERISA, Congress provided that plan administrators could treat a domestic relations order entered prior to the Act's effective date (January 1, 1985) "as a qualified domestic relations order even if such order does not meet the requirements of such amendments." Retirement Equity Act of 1984, Pub. L. No. 98–397, § 303(d), 98 Stat. 1426, 1453. As a result, we have held that domestic relations orders entered before 1985 need only "substantially comply" with this provision. *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 422 (6th Cir. 1997). But *Marsh* cabined this relaxed standard to pre-1985 orders. "As the divorce decree was written before the REA amended ERISA in 1984," *Marsh* explained, "we should not

demand literal compliance." *Id.* When the Second Circuit adopted *Marsh*'s substantial compliance test, *Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 443 (2d Cir. 2002), it likewise limited its application to pre-1985 orders, *Yale-New Haven Hosp. v. Nicholls*, 788 F.3d 79, 85 (2d Cir. 2015).

The Jacksons divorced long after 1985. The divorce decree dates from 2006, meaning that, to be a qualifying plan, Sierra must meet the standards of § 1056(d)(3)(C) and thus must show that the Jacksons' divorce decree "clearly specifies" the required information.

While a "clearly specifies" standard demands more than a "substantially complies" standard, that does not mean it requires Simon Says rigidity or demands magic words. One may "clearly specify" something by implication or inference so long as the meaning is definite. *See* Oxford English Dictionary 159 (2d ed. 1989) (To specify means "to mention, speak of, or name (something) definitely or explicitly"); Webster's New International Dictionary 2415 (2d ed. 1934) ("to mention or name in a specific or explicit manner").

A few everyday examples illustrate the point. A cashier asks the grocery store customer: "paper or plastic?" The customer could signal his preference for plastic bags by saying "plastic." But he could just as clearly specify his choice by saying "not paper."

So too of a sports fan asked this question: Who is the greatest basketball player of all time: Michael Jordan or LeBron James? He might respond "LeBron James," which clearly specifies the answer. Or he might respond "Number 23," which does not clearly specify the answer. But if he responded "Number 23 of the Cleveland Cavaliers," no one would be confused. The sports fan did not *state* "LeBron James." But he did *specify* him. And clearly so.

A similar approach, informed by common sense and context, applies to the naming of the beneficiary of a life insurance policy. The statute does not require that a particular provision of the divorce decree clearly specify the relevant details. It requires the entire "domestic order" to do so, examined in full, not silo by silo. *See Russell v. Citigroup, Inc.*, 748 F.3d 677, 681 (6th Cir. 2014). After all, plan administrators act as fiduciaries and must follow reasonable procedures in distributing benefits. *See* 29 U.S.C. § 1056(d)(3)(G), (I). It would not be reasonable for a fiduciary to fail to consider the entirety of the decree documents being

interpreted.  All of this demonstrates that the statute's "clearly specifies" test does not require, as Sun Life argues, any "strict" *method* of compliance.  *See* Brief for Appellant at 10–11.

Sierra and the Department of Labor, as *amicus curiae*, argue that this legal standard frustrates Congress's purpose of protecting spouses, ex-spouses, and dependents.  No doubt, the words of the law seek to allow participants to alter their employment benefits more easily in response to changes in family status.  But Congress rarely legislates to effectuate a single purpose.  And it rarely pursues any given purpose at all costs.  The essence of legislative choice is to decide how much of a particular objective to achieve at a particular cost to other interests. *See Contract Courier Servs. v. Research & Special Programs Admin.*, 924 F.2d 112, 115 (7th Cir. 1991).

Two competing considerations were at play in this instance: flexibility and administrability.  The new law gave family members greater flexibility in changing the beneficiaries of an employee plan.  But it poured that new idea into an old scheme, one that demanded uniformity and a standard procedure for how to process claims and disburse benefits easily without undue risk of delay and litigation. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300–01 (2009).

Congress balanced these twin aims through § 1144(b)(7) and § 1056(d)(3)(C).  Those provisions protect spouses and dependents by allowing a state order, outside of the four corners of the employee benefit plan, to modify the distribution of the plan's benefits.  29 U.S.C. § 1144(b)(7).  At the same time, the provisions protect plan administrators by requiring the order to be clear about the identity of the alternate payee and the benefits to be redirected. *Id.* § 1056(d)(3)(C).  To lighten the load on one side of the tradeoff is to increase the burden on the other.

We realize that this Court appeared to slip *Marsh* from its statutory mooring and applied the "substantially complies" test, rather than the "clearly specifies" legislative test, to post-1985 orders in two unpublished opinions. *Mattingly v. Hoge*, 260 F. App'x 776, 780 (6th Cir. 2008); *Metro. Life Ins. Co. v. Clark*, 159 F. App'x 662, 665 (6th Cir. 2005).  But *Clark* went on to conclude that the divorce decree at issue was not only in substantial compliance but also in

"literal compliance" with the statute. 159 F. App'x at 665. And it is difficult to tell whether *Mattingly* relied on the relaxed standard and thus whether the standard made any difference to the outcome of the case. *See* 260 F. App'x at 780. Unpublished decisions of this Court in any event are non-precedential and bind only the parties to those cases. *FDIC v. Dover*, 453 F.3d 710, 715 (6th Cir. 2006).

The Department of Labor also claims that the Seventh, Ninth, and Tenth Circuits have adopted a "substantially complies" test and urges us to follow them. But neither the Seventh Circuit nor the Tenth Circuit mentions that phrase. *Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080 (7th Cir. 1994); *Hawkins*, 86 F.3d 982; *Carland v. Metro. Life Ins. Co.*, 935 F.2d 1114 (10th Cir. 1991). In *Wheaton*, to the contrary, the Seventh Circuit concluded that "the literal reading of ERISA as amended by the Retirement Equity Act . . . makes more practical sense than a flexible reading" and emphasized that the "clearly specifies" language of § 1056(d)(3)(C) is "explicit and emphatic." 42 F.3d at 1084. And the Tenth Circuit in *Hawkins* likewise concluded that "accept[ing] anything less than what [§ 1056(d)(3)(C)] expressly requires would . . . read language out of a statute" and thus refused to do "violence to the plain meaning of the statute." 86 F.3d at 992. And although the Ninth Circuit has stated that it "require[s] substantial compliance" with the statutory requirements, it also cautioned that "an overly expansive interpretation may render the specificity requirements toothless," and concluded that "[t]he pivotal question is whether the dissolution order 'clearly contains the information specified in the statute.'" *Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1097 (9th Cir. 2006) (quoting *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1154 (9th Cir. 2000)).

To the extent these courts undertake a contextual inquiry that examines the decree in its entirety when applying the statute, we do not disagree. That indeed is required. And to the extent any court means to adopt a "substantially complies" test for post-1985 orders, it neglects a congressional directive that, to borrow a phrase, is clearly specified.

B.

*Application of the "clearly specifies" test.* In assessing whether the Jacksons' divorce decree "clearly specifies" the information required by the statute, we may consider the divorce decree and the two other documents it incorporates: the Jacksons' separation agreement and their shared parenting plan. The three documents, taken together, satisfy each of the relevant requirements, entitling Sierra to the benefits.

*Name and mailing address of participant?* The statute first requires the order to clearly specify the name and last known mailing address of the plan participant. 29 U.S.C. § 1056(d)(3)(C)(i). Article IX of the separation agreement notes that "Father and Mother" shall maintain life insurance. R. 29-1 at 29. These terms unambiguously refer to Bruce Jackson and Bridget Jackson, who are identified as the parents of Sierra Jackson on Page 1 of the agreement. That page also lists their respective mailing addresses.

*Name and mailing address of alternate payee?* The statute next requires the order to clearly specify the name and mailing address of each alternate payee from the payee identified in the plan. 29 U.S.C. § 1056(d)(3)(C)(i). Article IX requires Bruce to maintain life insurance "naming their minor child as primary beneficiary." R. 29-1 at 29. Page 1 states that "[t]he parties have one (1) child born the issue of this marriage, namely: Sierra N. Jackson, born February 9, 1995." *Id.* at 24. The agreement thus clearly specifies Sierra Jackson as the alternate payee.

As for the mailing address, the shared parenting plan designates Bruce and Bridget Jackson as the shared "residential parent[s] and legal custodian[s]" of Sierra Jackson. *Id.* at 20. The decree also states, as a court finding, that the "parties will be spending near equal time with the child." *Id.* at 16. And again the mailing addresses of both Bruce and Bridget Jackson are listed on the front page of the separation agreement.

*Amount or percentage of benefits?* The statute next requires the order to clearly specify the amount or percentage of the participant's benefits to be paid to each alternate payee. 29 U.S.C. § 1056(d)(3)(C)(ii). Article IX specifies that Bruce shall maintain "all employer-provided life insurance . . . naming their minor child as primary beneficiary." R. 29-1 at 29.

Because the agreement identifies all employer-provided life insurance and names no other beneficiaries, Sierra plainly is entitled to 100% of the benefit proceeds.

*Number of payments or applicable period?* The statute next requires the order to clearly specify the number of payments or the period to which such order applies. 29 U.S.C. § 1056(d)(3)(C)(iii). Article IX says that

> the obligation . . . shall continue until [Sierra] (a) reach(es) the age of eighteen (18) or graduates from high school, whichever occurs last; or (b) is otherwise emancipated, or (c) some other event occurs which relieves the parties of the obligation of child support, and provided, however, that the duty of child support shall not continue past the age of nineteen (19) unless ordered by a court.

R. 29-1 at 29. This language plainly identifies the period during which Sierra is the alternate payee.

*Plan identity?* The statute next requires the order to clearly specify each plan to which the order applies. 29 U.S.C. § 1056(d)(3)(C)(iv). Here too Article IX speaks unambiguously by referring to "all employer-provided life insurance." R. 29-1 at 29.

Sun Life offers a number of competing arguments. They are unpersuasive. Sun Life points out that Article IX in broader scope says that Bruce "shall maintain . . . all employer-provided life insurance, now in existence at a reasonable cost, or later acquired at a reasonable cost, naming their minor child as primary beneficiary." *Id.* Sun Life argues that this creates ambiguity as to which plans are at issue. But the reasonable cost qualification most naturally speaks to the extent of Bruce's obligation to maintain life insurance in the first instance. There is little dispute that, once Bruce entered into a life insurance plan, Sierra would be the beneficiary. There was thus no need for the plan administrator to conduct an open-ended inquiry into whether a life insurance plan was acquired at reasonable cost. It is no coincidence that, in the litigation below, no one ever asked whether Bruce's payment for the policy, $16.82 per pay period, was reasonable.

Sun Life faults the order for not specifying whether it pertained to Bruce's basic or optional insurance. It also points out that it did not begin managing Bruce's plan until 2008, two

years after the decree was executed. But "all" means all—basic and optional coverage, no matter who manages the plan, and no matter when they assume those duties.

Sun Life also argues that Bruce's optional life insurance is not "employer-provided life insurance" under the agreement because Bruce, rather than his employer, paid the plan premiums. True, but the optional life insurance plan was a group policy offered only through his employer. And there would be no reason for the agreement to specify "employer-provided life insurance now in existence at a reasonable cost" if "employer-provided life insurance" covered only policies completely paid for by Bruce's employer. R. 29-1 at 29.

Even if the divorce decree and accompanying documents satisfy these specificity requirements, Sun Life argues that the remedial clause of the decree precludes Sierra from obtaining relief. "The parties' minor child," that provision reads, "shall have a valid claim against the probate estate of a non-compliant party." R. 29-1 at 30. But this provision does not state that the child has a claim against *only* the probate estate to the exclusion of everybody else. It just provides an alternate right of action. Sierra at any rate does not seek relief for a breach of the decree. She seeks relief because the decree amounts to a qualified domestic relations order under ERISA that entitles her to the life insurance proceeds.

In a variation on this theme, Sun Life argues that Bruce and Bridget failed to comply with the decree's requirements to change the name of the beneficiary and monitor the beneficiary designation and thus extinguished any rights Sierra may have had against Sun Life. Cut from the same cloth, this claim fails for much the same reason. These shortcomings may have entitled Sierra to take action against the probate estate and perhaps those rights now have been forfeited. But today Sierra brings a claim under ERISA, not a common-law contract claim. Her parents' (alleged) non-compliance with the decree does not limit Sierra's rights under ERISA. As long as the order suffices as a qualified domestic relations order, she deserves the proceeds of her father's life insurance policy.

Sun Life's argument that Sierra cannot pursue her claim because it was not timely notified of the existence of the order also fails. Sun Life does not dispute that Sierra's attorney provided Sun Life with a copy of the order well before the payment was issued to Richard; this

notice was sufficient to preserve Sierra's claim despite being received after Bruce's death. *See Nicholls*, 788 F.3d at 86–87 (upholding the validity of posthumous *nunc pro tunc* orders as qualified domestic relations orders); *Files v. ExxonMobil Pension Plan*, 428 F.3d 478, 489 (3d Cir. 2005) (holding that a qualified domestic relations order may be pursued posthumously); 29 C.F.R. § 2530.206(c)(2) (noting that a qualified domestic relations order may be issued posthumously).

Richard Jackson, the unfortunate victim of this saga, has filed a pro se brief in which he seeks damages for loss of income related to this lawsuit. The district court rejected these claims below as meritless. And Richard never filed a notice of appeal challenging that ruling. We thus have no authority to address it. 28 U.S.C. § 2107(a).

For these reasons, we affirm.