**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 18, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STELA FESTINI-STEELE,

    Plaintiff - Appellant,

v.

EXXONMOBIL CORPORATION,

    Defendant - Appellee.

No. 20-1052
(D.C. No. 1:18-CV-01342-RM-GPG)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

This appeal involves whether a Decree of Dissolution of Marriage ("Divorce

Decree" or "Decree") is a Qualified Domestic Relations Order ("QDRO") under the

Employee Retirement Income Security Act ("ERISA"), *codified at* 29 U.S.C. §§ 1001

to 1461.  If the Decree is a QDRO, then the plaintiff, Stela Festini-Steele, is entitled

to the proceeds of a group life insurance policy that her ex-husband, Billy Steele,

held through defendant ExxonMobil Corporation.  ExxonMobil concluded that the

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Decree was not a QDRO and declined to pay Ms. Festini-Steele the insurance proceeds. The district court agreed and closed the case. Ms. Festini-Steele appeals. We conclude that the Decree is a QDRO. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

## I. **QDRO REQUIREMENTS UNDER ERISA**

ERISA generally obligates administrators to manage ERISA plans "in accordance with the documents and instruments governing" them. 29 U.S.C. § 1104(a)(1)(D). ERISA also preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). But there is an exception to ERISA preemption for QDROs "within the meaning of section 1056(d)(3)(B)(i)." § 1144(b)(7). In § 1056(d)(3)(B)(i), Congress defined a QDRO as "a domestic relations order . . . which creates or recognizes the existence of an alternate payee's rights to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I).

To qualify as a QDRO, a domestic relations order ("DRO")[1] must meet certain statutory requirements, *see* § 1056(d)(3)(B)(i)(II):

---

[1] No one disputes that ERISA governs the plan at issue here or that the Divorce Decree fits the definition of a "domestic relations order" set out in § 1056(d)(3)(B)(ii)—"any judgment, decree, or order (including approval of a property settlement agreement)" that "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and "is made pursuant to a State domestic relations law."

2

A domestic relations order meets the requirements of this subparagraph only if such order *clearly specifies*—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

§ 1056(d)(3)(C) (emphasis added).

If a DRO is a QDRO, it is exempt from ERISA preemption and plan benefits are payable to the "alternate payee" designated in the QDRO. *See Carland v. Metro. Life Ins. Co.*, 935 F.2d 1114, 1120 (10th Cir. 1991) ("Taken together, sections 1144(b)(7) and 1056(d)(3)(B)(i) of the statute exempt divorce decrees meeting the statutory requirements from ERISA preemption.").[2]

## II. **BACKGROUND**

Ms. Festini-Steele and Mr. Steele divorced in 2014. They filled out a Separation Agreement that was incorporated into the Divorce Decree. The Separation Agreement is a standard form created by the "Colorado Judicial

---

[2] "The term 'alternate payee' means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." § 1056(d)(3)(K).

Department for use in the Courts of Colorado."  Aplt. App., Vol. 2 at 43.  The form

provides a series of check-box options regarding life insurance and instructs the

parties to "[c]heck all that apply."  *Id.* at 45.  Ms. Festini-Steele and Mr. Steele

checked two boxes.  The first box corresponds to this statement:  "The parties agree

to the following terms relating to *all* life insurance accounts."  *Id.* (emphasis added).

The second box is for "Other," and in the blank following it they stated:  "The

Petitioner Billy R. Steele will carry life insurance on Co-Petitioner Stela

Festini-Steele as beneficiary until daughter A.S. is 18 years of age[.]"  *Id.* at 46

(brackets omitted).  The Life Insurance section of the Separation Agreement is

reproduced below:

**D.    Life Insurance (Check all that apply.)**

☐ The parties do not have life insurance.
☑ The parties agree to the following terms relating to all life insurance accounts.
☐ Neither party will be required to carry life insurance on his/her life.
    or
☐ The Petitioner will carry life insurance on his/her life in the amount of $ _____
with _____ (name of spouse) as beneficiary
☐ for _____ (years/months) or ☐ until _____ (specific date)
    and/or
☐ The Co/Petitioner/Respondent will carry life insurance on his/her life in the amount of $ _____
    with _____ (name of spouse) as beneficiary

☐ for _____ (years/months) or ☐ until _____ (specific date)
☑ Other:

The Petitioner Billy R. Steele will carry life insurance on Co-Petitioner Stela Festini-Steele as beneficiary until
daugther [A. S.]    is 18 years of age

*Id.* at 45-46.  When they executed the Separation Agreement, Mr. Steele worked for

ExxonMobil.

4

After the divorce, Mr. Steele remarried.  In 2017, he died in a car accident.  His daughter, A.S., was then four years old.  Ms. Festini-Steele contacted ExxonMobil, provided a copy of the Divorce Decree, and requested the benefit from Mr. Steele's ExxonMobil life insurance plan.  ExxonMobil informed her that she was not a named beneficiary on Mr. Steele's life insurance plan and denied her request for benefits.[3]  In the denial letter, ExxonMobil determined the Divorce Decree did not meet the QDRO requirements because it did "not specify an amount of insurance to carry" or "specify the name of the benefit plan."  *Id.* at 27.

Ms. Festini-Steele then filed an action in Colorado state court, which ExxonMobil removed to federal court.  There, Ms. Festini-Steele filed an amended complaint advancing an ERISA civil-enforcement claim and a state-law claim for abuse of process, and she moved for judgment on the pleadings.  A magistrate judge filed a report recommending the district court deny the motion for judgment on the pleadings and instead issue an order (1) declaring the Divorce Decree is not a valid QDRO under ERISA because it does not satisfy § 1056(d)(3)(C)(iv)'s plan-identification requirement and (2) dismissing the action.

---

[3] According to the parties' oral argument in the district court, Mr. Steele either never designated a beneficiary or he executed a form selecting the plan's standard beneficiary designation protocol under which the first beneficiary would be his current spouse if she survived him.  *See* Aplt. App., Vol. 2 at 68:9-16, 71:1-7 (plaintiff's argument); *id.* at 96:23 to 97:2 (ExxonMobil's argument); *id.*, Vol. 1 at 87 (the "standard list of beneficiaries" set out in the Summary Plan Description, which places the participant's surviving "spouse" in first position).  Under either view of the facts, the result will be the same:  Ms. Festini-Steele is not the beneficiary unless the Divorce Decree is a QDRO.

5

Ms. Festini-Steele filed objections to the recommendation. After overruling those objections, the district court accepted and adopted the magistrate judge's recommendation to deny Ms. Festini-Steele's motion for judgment on the pleadings. The court concluded that the Divorce Decree did not qualify as a QDRO because "[n]o plan is identified or named in the separation agreement, and . . . it is not entirely clear whose life is to be insured and who the intended beneficiary is." Aplt. App., Vol. 2 at 154 (citing § 1056(d)(3)(C)(iv)). The court also determined that the Decree did not qualify as a QDRO because it did not "clearly specify the amount or percentage of the participant's benefits to be paid by the plan to [Ms. Festini-Steele], or the manner in which such amount or percentage is to be determined." *Id.* at 155 (citing § 1056(d)(3)(C)(ii)). This appeal followed.[4]

## III. **DISCUSSION**

### A. *Standard of review*

We review ExxonMobil's decision to deny Ms. Festini-Steele's claim, not the district court's ruling. *See Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009). We therefore afford no deference to the district court's decision. *Martinez v. Plumbers & Pipefitters Nat'l Pension Plan*, 795 F.3d 1211,

---

[4] In a separate minute order filed the same day as its order denying the motion for judgment on the pleadings, the district court explained that it had not adopted the magistrate judge's recommendation to dismiss the case because Ms. Festini-Steele had not sought a ruling on her state-law claim. *See* Aplt. App., Vol. 1 at 15 (docket entry 143). The parties then filed a notice of stipulated dismissal of the state-law claim, and the court closed the case, *see id.* at 16 (docket entry 150). We therefore conclude that the district court effectively dismissed all claims and we have jurisdiction over this appeal under 28 U.S.C. § 1291.

1214 (10th Cir. 2015). Our review is de novo because whether a DRO is a QDRO presents a legal question, not a matter over which a plan administrator could have discretionary authority. *See id.* (explaining that our review in an ERISA civil-enforcement action "is de novo unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan" (internal quotation marks omitted)); *Carland*, 935 F.2d at 1118 (applying de novo review to whether a DRO is a QDRO under ERISA).

## B. *Merits*

Ms. Festini-Steele raises two issues, both couched as matters of district court error. But given that we review the plan administrator's decision, not the district court's, we construe the issues as follows: (1) ExxonMobil has impermissibly relied on three rationales raised only in litigation, and (2) ExxonMobil erred in determining that the Divorce Decree was not a QDRO.

### 1. **ExxonMobil is Limited to Reasons Given in its Denial Letter**

As noted, ExxonMobil provided two reasons at the administrative level for concluding the Divorce Decree did not meet the QDRO requirements: (1) it did "not specify an amount of insurance to carry" and (2) it did "not specify the name of the benefit plan." Aplt. App., Vol. 2 at 27. But in the district court, it relied on three arguably different reasons. Ms. Festini-Steele contends that was improper because ExxonMobil did not provide those reasons in its administrative denial of her claim. *See Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) ("[F]ederal courts will consider only those rationales that were

7

specifically articulated in the administrative record as the basis for denying [an ERISA] claim." (internal quotation marks omitted)). We agree with Ms. Festini-Steele in part.[5]

ExxonMobil's first "litigation only" reason was that the Decree did not make it clear whether Mr. Steele was required to carry insurance on himself or on Ms. Festini-Steele or who the beneficiary was supposed to be. ExxonMobil may not now rely on this reason because it stated in its denial letter that the "[D]ecree requir[ed] Billy Steele to carry life insurance with Stela Festini-Steele as beneficiary." Aplt. App., Vol. 2 at 27. That amounts to a concession that the Decree required Mr. Steele to carry insurance on his own life, not on Ms. Festini-Steele's life, and that Ms. Festini-Steele was to be the beneficiary.

The second litigation-only reason was that the Decree did not clearly specify the amount or percentage of benefits or the manner in which they were to be paid, which is the second QDRO requirement, *see* § 1056(d)(3)(C)(ii). But in its administrative denial, ExxonMobil did not expressly invoke the second requirement, relying instead on a tangentially related reason—that the Decree did not clearly specify an amount of insurance to carry, which is not among the statutory requirements. By not invoking the second requirement in its denial letter,

---

[5] ExxonMobil advanced these three arguably different reasons in the district court, but on appeal it does not discuss or rely on the first two. Despite this apparent abandonment of those two reasons, we address Ms. Festini-Steele's argument because it bears on whether we may nevertheless consider either of those reasons as grounds for affirmance.

ExxonMobil is precluded from relying on it here. But even if it is not precluded, our resolution of this appeal would be the same, because, as we will discuss, the Decree meets the second requirement.

The third reason ExxonMobil raised in litigation was that the Decree did not clearly specify whether the phrase "all life insurance accounts" meant life insurance plans or policies that were "employer-provided," "now in existence," or "later acquired," *see, e.g.*, Aplt. App., Vol. 2 at 22; 79-80; 146-48. That "reason," however, is nothing more than legal argument relevant to the fourth statutory requirement, to clearly identify "each plan to which [the Decree] applies," § 1056(d)(3)(C)(iv). And ExxonMobil's administrative denial on the ground that the Decree "does not specify the name of the benefit plan," Aplt. App., Vol. 2 at 27, clearly rested on the fourth requirement. Consequently, we may consider this legal argument.

2. **The Decree is a QDRO**

a. *Second QDRO requirement: amount or percentage of benefits*

We first address the second QDRO requirement—to "clearly specif[y] . . . the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined," § 1056(d)(3)(C)(ii). The Decree meets this requirement by directing Mr. Steele to designate Ms. Festini-Steele "as beneficiary." By not identifying any other beneficiaries, and by not naming Ms. Festini-Steele as, for example, "*a* beneficiary," the Decree "clearly specifies" that Ms. Festini-Steele was to be the sole beneficiary and, as such, entitled to 100% of the benefit. *See Sun Life Assurance Co.*

9

*of Can. v. Jackson*, 877 F.3d 698, 704 (6th Cir. 2017) (concluding that decree naming a single beneficiary of all employer-provided insurance met second QDRO requirement);[6] *Metro. Life Ins. Co. v. McDonald*, 395 F. Supp. 3d 886, 891 (E.D. Mich. 2019) (concluding that divorce decree listing ex-spouse as "primary beneficiary" met the "amount or percentage" requirement).

   b. *Fourth QDRO requirement: plan identification*

The parties' real dispute concerns the fourth QDRO requirement—to "clearly specif[y] . . . each plan to which [a domestic relations] order applies," § 1056(d)(3)(C)(iv). Ms. Festini-Steele argues that ExxonMobil improperly denied her claim for failing to "specify the name of the benefit plan," Aplt. App., Vol. 2 at 27, because nothing in the statute requires divorcing parties to list the name of a benefit plan to create a QDRO. She claims that by referring to "*all* life insurance accounts," *id.* at 45 (emphasis added), the statement she and Mr. Steele wrote, that Mr. Steele "will carry life insurance" with Ms. Festini-Steele as the beneficiary until their daughter turned eighteen, *id.* at 46, "objectively encompasses every plan, of any name," Aplt. Opening Br. at 5. In other words, Ms. Festini-Steele's position is that the Decree is all-inclusive, requiring her to be the sole beneficiary on any life insurance plan or policy Mr. Steele held on his own life until their daughter turned 18, whether in existence at the time the Decree was executed or later acquired. In

---

[6] For reasons discussed below, we disagree with ExxonMobil that in *Jackson*, the Sixth Circuit applied a less rigorous QDRO standard than our circuit requires.

essence, her argument reduces to "all means all" and therefore unquestionably includes the ExxonMobil plan.

Ms. Festini-Steele's position relies on *Jackson*. In *Jackson*, the Sixth Circuit considered a provision in a divorce decree requiring each party to "maintain, unencumbered, *all* employer-provided life insurance, now in existence at a reasonable cost, or later acquired at a reasonable cost, naming their minor child as primary beneficiary during her minority." 877 F.3d at 700 (emphasis added) (internal quotation marks omitted). At the time of the divorce, the husband had an employer-sponsored life insurance policy listing his uncle as the beneficiary. Despite the decree, he never changed the beneficiary. When he died, the insurance company paid the uncle and then sought a declaratory judgment that it had paid the proper party. The district court ruled that it had.

On appeal, the Sixth Circuit concluded that the decree was a QDRO and reversed. The court reasoned that "[o]ne may 'clearly specify' something by implication or inference so long as the meaning is definite." *Id.* at 701 (noting dictionary definitions of "specify" meaning "to mention, speak of, or name (something) definitely or explicitly" and "to mention or name in a specific or explicit manner" (internal quotation marks omitted)). As to plan identity, the court ruled that the decree spoke "unambiguously by referring to 'all employer-provided life insurance.'" *Id.* at 704 (quoting decree). In rejecting the insurer's argument that the decree was insufficient because it did not specify whether it pertained to the husband's basic or optional insurance and because the insurer had not begun to

11

manage the plan until two years after the decree was executed, the court determined that "'all' means all—basic and optional coverage, no matter who manages the plan, and no matter when they assume those duties." *Id.*

We consider *Jackson*'s reasoning persuasive with respect to the Divorce Decree here. By checking the box providing that "[t]he parties agree to the following terms relating to *all* life insurance accounts," Aplt. App., Vol. 2 at 45 (emphasis added), Mr. Steele and Ms. Festini-Steele clearly specified that Mr. Steele was required to name Ms. Festini-Steele as the beneficiary of all life insurance plans or policies insuring his life until their daughter A.S. turned eighteen.

c. *ExxonMobil's counterarguments*

ExxonMobil offers multiple counterarguments. First, it contends we should not follow *Jackson* because the Sixth Circuit employed a "substantial compliance" standard that we rejected in *Hawkins v. Commissioner*, 86 F.3d 982, 992 (10th Cir. 1996). We disagree. *Jackson* expressly rejected the idea that "substantial compliance" with § 1056(d)(3)(C)'s requirements was sufficient. That standard, the court noted (and we agree), continues to apply only to DROs entered before January 1, 1985, the effective date of the Retirement Equity Act of 1984 ("REA"), Pub. L. No. 98-397, 98 Stat. 1426, which promulgated the QDRO requirements. *See Jackson*, 877 F.3d at 701. The court made clear that it requires DROs entered after that date to "clearly specify" the required information, *id.*, and it relied on *Hawkins* in support of its application of that standard, *id.* at 702-03.

12

We need not accept that *Jackson* applied the proper standard or one consistent with *Hawkins* just because the court said it was doing so.[7] But we conclude that *Jackson*'s application of the directive to "clearly specify" the four QDRO requirements is consistent with *Hawkins*.

*Hawkins* concerned the tax consequences of a marital settlement agreement providing that the wife was to receive "cash of One Million Dollars from Husband's share of the Arthur C. Hawkins, D.D.S. Pension Plan." 86 F.3d at 993 (brackets and ellipsis omitted). We reasoned that this language satisfied the fourth QDRO requirement by clearly referring to the plan by name. *Id.*[8]

Although *Hawkins* is an example of language that is specific enough to satisfy the fourth QDRO requirement, nothing in *Hawkins* requires a DRO to identify a plan by name or establishes a minimum degree of specificity that would pass statutory muster.[9] Instead, *Hawkins* reached its conclusion after discussing how a domestic

---

[7] As the parties note, at least one district court in our circuit has taken the view that the Sixth Circuit "takes a relaxed approach to the QDRO requirements" and requires only "'substantial compliance'" with § 1056(d)(3)(C)'s requirements. *See QuikTrip Corp. v. Javaher*, No. 14-CV-674-JHP-PJC, 2015 WL 7103558, at *4 (N.D. Okla. Nov. 13, 2015) (unpublished).

[8] Although *Hawkins* involved QDRO requirements under the Internal Revenue Code ("IRC"), we apply identical interpretations to QDRO requirements under ERISA and the IRC because "the two parallel provisions were created by the same legislative act [the REA] and contain precisely the same language." *Hawkins*, 86 F.3d at 988 n.5.

[9] These same two points apply to *Carland*, where we held that a schedule to a property settlement agreement incorporated into a divorce decree satisfied the fourth

13

relations order must clearly specify the required information. We first noted that

"[w]hether a [DRO] qualifies as a QDRO depends on the language of the order itself;

the subjective intentions of the parties are not controlling." *Id.* at 989-90. We also

observed that the purpose of the specificity requirement "is to reduce the expense of

ERISA plans by sparing plan administrators the grief they experience when because

of uncertainty concerning the identity of the beneficiary, they pay the wrong person,

or arguably the wrong person, and are sued by a rival claimant." *Id.* at 991 (internal

quotation marks omitted).

We then rejected an argument that the specificity requirement "need not be

strictly complied with . . . when the plan administrator, by virtue of his independent

knowledge, is already cognizant of that information." *Id.* at 992. We reasoned that

construing the specificity requirements "this liberally" or, as the Seventh Circuit

appeared to do in *Metropolitan Life Insurance Co. v. Wheaton*, 42 F.3d 1080 (7th Cir.

1994), "eliminating them altogether," would ignore the statutory mandate to clearly

specify the required information. *Hawkins*, 86 F.3d at 992. It also would involve

plan administrators and courts in an "*ad hoc* subjective inquiry" into the parties'

"'true' intentions," allowing "even the most facially inadequate order [to]

theoretically qualify as a QDRO, so long as the plan administrator was aware of the

parties' 'true' intentions." *Id..* An overly liberal construction of the specificity

---

QDRO requirement because it specified a group life insurance policy by certificate
number. 935 F.2d at 1120.

requirement, we said, would also "allow the parties to omit the requested information whenever it is convenient or even perhaps logical to do so." *Id.* at 993

The Divorce Decree in this case is consistent with *Hawkins*. The phrase "all life insurance contracts" eliminates the need for the plan administrator to conduct an "*ad hoc* subjective inquiry" into the parties' "'true' intentions." *Id.* at 992. "All" means just that—all. *See Jackson*, 877 F.3d at 704. And because "all" is sufficient to clearly specify that the ExxonMobil plan is subject to the Decree, the Decree does not "omit the requested information," *Hawkins*, 86 F.3d at 993, even though it does not refer to the ExxonMobil plan by name.[10]

ExxonMobil argues that even if *Jackson* employed a standard consistent with *Hawkins*, *Jackson* is factually distinguishable because the provision there required

---

[10] We find unpersuasive three decisions on which ExxonMobil relies holding or suggesting that, to be a QDRO, a DRO must specify each plan by name. *See Yale-New Haven Hosp. v. Nicholls*, 788 F.3d 79, 85 (2d Cir. 2015) (concluding that state-court order was QDRO as to three plans designated by name in the order but not as to a fourth plan, which was not designated by name); *Metro. Life Ins. Co. v. Leich-Brannan*, 812 F. Supp.2d 729 (E.D. Va. 2011) (concluding that DRO providing that the husband agreed to make his wife "his irrevocable beneficiary on all of his personal and group life insurance, [and] to maintain all such insurance in force," *id.* at 734, did not satisfy the fourth QDRO requirement because "it did not identify the specific plan to which the agreement applies," *id.* at 737); *Deaton v. Cross*, 184 F. Supp. 2d 441 (D. Md. 2002) (considering provision that "[h]usband hereby agrees to name the children of the parties as the irrevocable beneficiaries of any policy of [life] insurance available to him through his employer until such time as the youngest child of the parties attains the age of twenty two (22) years," *id.* at 442-43 (brackets in original), and concluding that "a blanket reference to workplace life insurance" did not satisfy the fourth QDRO requirement, at least where no implied designation of the subject plan could be made because husband was not plan participant at the time the separation agreement was executed, *id.* at 444).

15

the parties to "maintain . . . all employer-provided life insurance, now in existence . . . or later acquired," 877 F.3d at 700 (internal quotation marks omitted), whereas the Decree in this case used the phrase "will carry life insurance" and omitted the words "maintain," "employer-provided," and "now in existence . . . or later acquired," Aplt. App., Vol. 2 at 45. But we see no reason to distinguish *Jackson* in this manner. When read in context with the requirement to name "their minor child as primary beneficiary" until she "reaches the age of eighteen . . . or graduates from high school, whichever occurs last," *Jackson*, 877 F.3d at 700 (parentheses and internal quotation marks omitted), the word "maintain" indicates only that the *Jackson* parties were obligated to keep any insurance policies "in existence" at the time of the divorce or "later acquired" until the occurrence of the designated milestone. Here, the phrase "will carry life insurance . . . until daughter A.S. is 18 years of age," Aplt. App., Vol. 2 at 46 (brackets omitted), serves the same function as "maintain" in *Jackson*. And because "all" means "all," "all life insurance contracts" necessarily includes both "employer-provided" life insurance and life insurance not provided by an employer, regardless of when it was obtained. Adding "employer-provided" or temporal qualifiers was unnecessary.

We also reject ExxonMobil's related contention that the phrase "will carry life insurance" can be read as referring to an insurance policy Mr. Steele was to purchase in the future. In support, ExxonMobil contrasts our case with *Teenor v. LeBlanc*, No. 18-cv-12364, 2019 WL 2074585 (E.D. Mich. May 10, 2019) (unpublished), where the court considered a provision also using the word "maintain": "[Husband]

16

shall maintain [wife] as principal beneficiary on all life insurance policies so long as spousal support is payable." *Id.* at *1 (internal quotation marks omitted). Relying on *Jackson*, the *Teenor* court said the specification that the wife "was to be kept as the principal beneficiary on 'all life insurance policies[]' necessarily encompass[ed] the plan at issue." *Id.* at *3. But merely because this language was sufficient to specify an insurance policy the husband held at the time of the divorce does not mean the phrase "will carry life insurance" in our case is a directive for future action. As discussed above, "will carry" functions as an obligation for Mr. Steele to maintain Ms. Festini-Steele as the beneficiary on all life insurance policies he had at the time of his death, regardless of when they were obtained, subject only to the proviso that the obligation would terminate when their daughter turned eighteen.

ExxonMobil suggests Ms. Festini-Steele and Mr. Steele could have made their intent clearer if they had checked a box on the Separation Agreement next to the option providing that "[t]he Petitioner [Mr. Steele] will carry life insurance on his/her life in the amount of $ _____ with _____ (name of spouse) as beneficiary," Aplt. App., Vol. 2 at 45. But their decision not to check this option and fill in the blanks is consistent with what they chose to do—to specify that no matter what life insurance plans Mr. Steele held or obtained, and without requiring any such plans to be for an amount certain, Mr. Steele had to name Ms. Festini-Steele as the beneficiary until their daughter turned eighteen.

Finally, ExxonMobil points out that the Separation Agreement warned the parties about the need to obtain a QDRO, thus suggesting the Separation Agreement

17

did not itself function as a QDRO.  But the warning appears in a separate section of the Agreement concerning only retirement plans, and there the parties checked boxes indicating they had no such plans or had already divided or transferred any such funds.  *See* Aplt. App., Vol. 2 at 47.  In any event, we do not think that the presence of this warning requires plan administrators or courts to determine that a DRO into which such a separation agreement is incorporated is not a QDRO.

## IV.  **CONCLUSION**

For the foregoing reasons, we reverse the district court's judgment and remand for entry of judgment in favor of Ms. Festini-Steele.  We grant the Motion to Withdraw as Counsel filed by Amparo Yanez Guerra on January 12, 2021.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

18