RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

GENE RAYMOND BELL, JR.,

*Plaintiff-Appellee*,

*v.*

CITY OF SOUTHFIELD, MICHIGAN,

*Defendant*,

ANTHONIE KORKIS, ARTHUR BRIDGEFORTH, and THOMAS LANGEWICZ, II, jointly and severally and in their individual capacities.

*Defendants-Appellants*.

No. 21-1516

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cv-13565—Gershwin A. Drain, District Judge.

Argued: March 17, 2022

Decided and Filed: June 14, 2022

Before: WHITE, THAPAR, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Kali M. L. Henderson, SEWARD HENDERSON PLLC, Royal Oak, Michigan, for Appellants. Ben M. Gonek, BEN GONEK LAW, P.C., Southgate, Michigan, for Appellee. **ON BRIEF:** Kali M. L. Henderson, T. Joseph Seward, SEWARD HENDERSON PLLC, Royal Oak, Michigan, for Appellants. Ben M. Gonek, BEN GONEK LAW, P.C., Southgate, Michigan, for Appellee.

———————————

**OPINION**

———————————

THAPAR, Circuit Judge.  When Gene Bell was pulled over, the police officer asked for his license, registration, and insurance, as officers commonly do.  But Bell refused.  Instead, he demanded to know why the officer had pulled him over.  Yet the officer wanted Bell's information first.  After a tense stand-off, officers pulled Bell out of his vehicle, wrestled him to the ground, and tased him.  Bell contends that the officers violated the Fourth Amendment's bar against excessive force.  The district court denied the officers qualified immunity, and they appealed.  We dismiss in part, reverse in part, and remand.

I.

Before we get to the facts, we must address a threshold legal question.  For an appeal from a motion to dismiss, we ordinarily stay within the four corners of the complaint to determine whether the plaintiff has stated a plausible claim for relief.  *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).  So can we consider the police officers' dash-cam video footage here?

Yes.  In qualified-immunity cases, we've previously considered videos at the motion-to-dismiss stage.  *See, e.g.*, *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).  And for good reason.  Qualified immunity isn't just a defense to liability—it's immunity from the costs and burdens of suit in the first place.  *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007); *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).  If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate.  *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (highlighting the importance of applying qualified immunity even before discovery); *see Scott*, 550 U.S. at 376 n.2.  So when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos.  Plus, the videos here are already in the record.  Indeed, the plaintiff's complaint implicitly relies on the videos by recounting facts that could only be known to him by

watching the videos.  Thus, it makes little sense to waste time and effort by ignoring the videos' contents.  *See Pearson*, 555 U.S. at 237.

That said, our use of the videos is limited at this stage.  If there is a factual dispute between the parties, we can only rely on the videos over the complaint to the degree the videos are clear and "blatantly contradict[]" or "utterly discredit[]" the plaintiff's version of events. *Scott*, 550 U.S. at 380.  Otherwise, we must accept the plaintiff's version as true.  *Id.*  This all makes sense—if the indisputable video evidence contradicts Bell's pleadings, his allegations are implausible.  *Bailey*, 860 F.3d at 387.

## II.

Next, the facts, drawn first from the allegations in Bell's complaint.  Bell alleges that Officer Anthonie Korkis pulled him over after a random license plate search showed no record of his license plate.  Bell asked why Korkis pulled him over, and Korkis responded that Bell first needed to provide his driver's license, registration, and car insurance. Korkis also told Bell that four more officers were on their way and that he "would be pulled out of his car and arrested for resisting and obstruction."  R. 21, Pg. ID 240.  Bell said he'd get out himself, but Korkis told him "we're going to do it our way."  *Id.*  And when backup arrived, Bell claims, the officers forcefully removed him from his vehicle (with a taser pointed at him), despite Bell volunteering a second time to exit on his own.  *Id.*  Once Bell laid on the pavement, the officers tased him "when there was no need to do such."  *Id.* at 241.

Yet looking to the videos, we see a fuller picture.  After Officer Korkis pulled Bell over, the videos indisputably show Korkis and Bell going back and forth for three minutes.  Korkis asked for Bell's information close to twenty times.  Bell continually pushed back with statements like: "What did I do?"  Ex. 3, at 2:14.  "I asked you what I did wrong."  *Id.* at 2:58.  "I want to know what I did wrong first."  *Id.* at 3:26.

Only then did Korkis reach into the window to unlock the door as he continued to ask Bell for his information.  But a physical struggle ensued, and it's not fully visible in the videos. The parties dispute who initiated this physical contact through the car window, and the videos don't answer that question.

Korkis and Officer Thomas Langewicz (who had arrived on the scene after Korkis called for backup) eventually pried open the driver's side door. The officers told Bell to get on the ground. But he repeatedly refused. So the officers wrestled him to the pavement. Korkis laid on the top portion of Bell's body. Langewicz tried to grab Bell's left arm several times, but Bell continued to pull it away. And on Bell's other side, a third officer, Arthur Bridgeforth, repeatedly demanded Bell give him his right arm. One of them warned that he'd tase Bell. Yet Bell still didn't put his hands behind his back. So Langewicz tased him. The officers then pulled Bell's hands behind his back, handcuffed him, and sat him up.

Bell sued all three officers under 42 U.S.C. § 1983, claiming they violated the Fourth Amendment's bar against excessive force by (1) removing him from his vehicle and (2) tasing him. The district court denied the officers' motion to dismiss based on qualified immunity. The officers appealed.

III.

Courts of appeals have jurisdiction over final decisions of district courts. 28 U.S.C. § 1291. The denial of a motion to dismiss generally isn't considered a final decision. But the denial of qualified immunity is treated as a final decision if the appeal is about a legal issue. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). That's because, as mentioned, qualified immunity's protection from suit is lost if the defendant is forced to litigate through before appealing. *See Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002). So appellate courts have limited jurisdiction to answer purely legal questions in appeals from the denial of qualified immunity. *Thompson v. City of Lebanon*, 831 F.3d 366, 370 (6th Cir. 2016). We ordinarily lack jurisdiction to wade into factual disputes. *Id.*

Yet we recognize two exceptions to entertain appeals from denials of qualified immunity that "may contain some dispute of fact." *Adams v. Blount County*, 946 F.3d 940, 948 (6th Cir. 2020). First, if the defendants are willing to accept the plaintiff's version of what happened, we can "overlook" the factual dispute and address the legal dispute based on the plaintiff's account. *Id.* Second, we have jurisdiction over an appeal that challenges the plaintiff's factual allegations

if those allegations are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *See id.* (quoting *Scott*, 550 U.S. at 380).

Here, the officers do not concede Bell's account. Rather, they argue that the videos "blatantly contradict" or "utterly discredit" Bell's version of events.

But what falls into the "blatantly contradict" or "utterly discredit" category? The way we see it, there are two different scenarios that help answer that question here. Assume a hypothetical where there are only two facts relevant to the outcome of an appeal from the denial of qualified immunity: first, whether the officer tased the plaintiff, and second, whether the plaintiff was holding a gun at the time.

*Hypothetical One.* The plaintiff's complaint only mentions the officer's tasing. There's no mention of a gun anywhere in the complaint. On appeal, the officer urges us to look at video footage, which he says shows that the plaintiff was holding a gun at the time. And suppose that's true—the video footage clearly shows the plaintiff holding a gun. In that case, the gun's presence blatantly contradicts the complaint's omission. So we would have jurisdiction to address the legal questions with both these facts in mind.

*Hypothetical Two.* Consider the exact same hypothetical. But this time, the video evidence is inconclusive as to what the plaintiff was holding. In this situation—without a concession to the plaintiff's facts or a blatant contradiction—the court would lack jurisdiction over the appeal as it relates to whether the plaintiff had a gun. We would have to rely only on the facts in the complaint.

So which scenario fits this case? Again, Bell points to excessive force at two moments: (1) the removal from the vehicle and (2) the tasing. *See Dickerson v. McClellan*, 101 F.3d 1151, 1161–62 (6th Cir. 1996) (highlighting the importance of analyzing force in segments). Each moment falls under one of the two hypotheticals.

A.

First, Bell's removal from his vehicle. Bell alleges that Officer Korkis "began to forcefully remove [him] from his vehicle, at one point threatening to break his hand while a taser gun was pointed at" him. R. 21, Pg. ID 240. And after exchanging barbs with the officers, the officers "forcefully removed [him] from the car." *Id.* On appeal, he claims that Korkis grabbed him through the window and started "a struggle" between them. Appellee's Br. 15.

The defendant officers see things differently. They contend that when Korkis reached into the window, Bell extended his hand toward Korkis, and that's why Korkis was justified in grabbing Bell's hand. In other words, the officers say Bell initiated the struggle through the car window, escalating his resistance "from verbal to physical." Appellants' Br. 39.

The problem for the officers is the videos do not clearly show what happened during this physical struggle through the window. It's unclear who initiated the physical altercation. The videos neither blatantly contradict, nor utterly discredit, Bell's contention that Korkis initiated the scuffle.

Thus, Bell's removal from the vehicle is like the second hypothetical. Without (1) a concession of Bell's version of the physical contact or (2) video evidence that blatantly contradicts or utterly discredits Bell's account, we are left with a factual dispute over which we do not have jurisdiction.[1] Thus, at this stage, we must dismiss this portion of the appeal.

B.

Unlike Bell's removal from his vehicle, the actions surrounding his tasing are clearly depicted in Korkis's dash-cam video. This moment falls under the first hypothetical. Bell alleges only that the officers "tased [him] when there was no need to do such." R. 21, Pg. ID 241. In our hypotheticals, that would be the equivalent of omitting evidence of a threat—like the

---

[1]The officers do not argue that they were justified in removing Bell from the vehicle just based on the clear verbal exchange leading up to the physical struggle through the window. In their brief and at oral argument, they continued to say that the verbal resistance *combined with* the alleged physical resistance through the window justified their use of force in removing Bell from the car. *See* Appellants' Br. 30–31 (emphasizing that Bell "demonstrated both verbal *and physical* resistance" and framing the question based on Bell "resisting both *physically and* verbally" (emphases added)).

presence of a gun. Bell fails to mention that he continued resisting the officers as they attempted to restrain him on the ground. The video clearly shows Bell moving his left arm away from Officer Langewicz multiple times before the officer tased him. The video blatantly contradicts the silence in Bell's account. So we have jurisdiction to consider qualified immunity based on what's clear in the video.

Thus, we examine the one legal question we have jurisdiction to decide: whether the officers are entitled to qualified immunity for the tasing.

IV.

Qualified immunity protects officials who must make split-second decisions while protecting the public. *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020). That's why we view officers' actions from the perspective of a reasonable officer in the particular situation that officer confronted. *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Officers are entitled to qualified immunity unless they (1) violated a constitutional right (2) that was "clearly established" at the time of the wrongdoing. *Pearson*, 555 U.S. at 232 (citation omitted). We can resolve a case on either prong. *Id.* at 236.

For the tasing, we start and end with the second: Was Bell's right not to be tasered clearly established in these specific circumstances?

The plaintiff bears the burden of showing that the right was clearly established. *Cunningham v. Shelby County*, 994 F.3d 761, 765 (6th Cir. 2021). And to do so, a plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered. *Id.* at 766. Except in an "obvious" circumstance, it's not enough for a plaintiff to offer cases that merely stand for the "general proposition" that the Fourth Amendment bars the use of excessive force. *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 6, 8 (2021) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004)). Instead, when it comes to excessive force, the Court has repeatedly told us that specific cases are "especially important." *See, e.g.*, *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11–12 (2021) (per curiam); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018) (per curiam).

The unlawfulness of the officer's acts "must be so well defined" that no reasonable officer would doubt it. *Bond*, 142 S. Ct. at 11 (citation omitted).

In addition, a plaintiff cannot point to unpublished decisions to meet this burden. Basic logic tells us at least this much. After all, the qualified-immunity inquiry looks at whether a right has been clearly established. For a right to be clearly established, "existing *precedent* must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas*, 142 S. Ct. at 8 (emphasis added) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)); *see also Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) ("[P]re-existing law must dictate, that is, truly compel . . . the conclusion . . . that what defendant is doing violates federal law in the circumstances." (citation omitted)). Yet how can an unpublished case place a question beyond debate when it doesn't even bind a future panel of this court? *See Sun Life Assurance Co. v. Jackson*, 877 F.3d 698, 702 (6th Cir. 2017) ("Unpublished decisions of this Court . . . are non-precedential and bind only the parties to those cases."); *see also Crocker v. Beatty*, 995 F.3d 1232, 1241 n.6 (11th Cir. 2021) (holding that unpublished cases cannot define clearly established law). It can't. So at a minimum, Bell must provide on-point caselaw that would bind a panel of this court.

Bell fails to do so. He fleetingly cites a single published case that found tasing the plaintiff constituted excessive force. But there, the defendants offered no video evidence. *Brown v. Chapman*, 814 F.3d 447, 460–61 (6th Cir. 2016). So the court had to adopt the plaintiff's explanations—that he never resisted arrest, never threatened the officers, and ran away from them during handcuffing to avoid getting hit. *Id.* at 453, 460. Here, indisputable video evidence shows Bell actively resisting—he repeatedly pulled his left arm away from Langewicz to avoid the handcuff (even after officers warned that he would be tased if he didn't comply). *See Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012) (finding active resistance, and thus no constitutional violation, when officers tased a plaintiff who refused to allow officers to secure his arms behind his back). So *Brown*, which assumed no active resistance, doesn't come close to providing the officers notice that tasing Bell was excessive here.

Nor do Bell's other cases help. All are either out-of-circuit or unpublished, and thus do not clearly establish anything as to the officers. Plus, those cases also diverge from Bell's.

Consider the two in-circuit cases Bell identifies. In *Kijowski v. City of Niles*, the court found that between removing the plaintiff from his car and tasing him, there wasn't time for him to resist. 372 F. App'x 595, 599 (6th Cir. 2010). Here, in contrast, Bell was on the ground for several seconds and moved his arm away from Officer Langewicz several times before Langewicz tased him. Indeed, Langewicz even warned Bell that he would taser him if Bell did not comply. And in *Landis v. Baker*, two officers had control of the plaintiff's arms (with one of them handcuffed already) before another officer tased him four times in a dangerous manner (while the plaintiff was in muddy water). 297 F. App'x 453, 461, 463–64 (6th Cir. 2008). Yet the officers in this case couldn't get control over either of Bell's arms before Langewicz tased him once. So even accounting for the unpublished cases he cites, Bell failed to show that Langewicz violated his clearly established rights.

\*　　\*　　\*

As to Bell's claim of excessive force in removing him from the vehicle, we dismiss this appeal for lack of jurisdiction. But because Bell hasn't shown his alleged right to not be tased was clearly established under the specific circumstances of this case, we reverse and remand for the district court to dismiss that issue based on qualified immunity.