NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0130n.06

Case No. 22-1839

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

<table>
<tr><td>

JOSEPH EDWARD DAVIS,

    Plaintiff-Appellant,

v.

ZACHARY DAVID CHORAK,

    Defendant,

DEPUTY A. TOOKER; DEPUTY J. C. SCAVARDA; EATON COUNTY, MICHIGAN, a municipal corporation organized under the laws of the State of Michigan,

    Defendants-Appellees.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

FILED
Mar 14, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

</td></tr>
</table>

Before: McKEAGUE, THAPAR, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. While in custody at the Eaton County Jail, Joseph Davis suffered injuries after another inmate attacked him. So Davis sued his attacker for damages under state law. He also brought federal claims against jail employees and Eaton County, alleging they violated his constitutional rights by failing to protect him from the attack. The district court granted the defendants' motion to dismiss, and we affirm.

I.

When inmates are booked into the Eaton County Jail, officials assign each inmate a security classification. Inmates classified at the same level are typically housed together. Joseph Davis was classified as a medium security risk when he entered the jail in September 2019. When Zachary Chorak arrived in February 2020, Deputy Scavarda classified him as a medium-high security risk.

Jail employees regularly review and revise inmate security classifications. So, over time, Davis and Chorak's classifications fluctuated. For the most part, Davis remained at medium, though he jumped to medium-high for a month. Chorak, by contrast, started at medium-high, but dropped to medium in May 2020. So by July 2, 2020, both Davis and Chorak were classified as medium security risks. That day, while Davis, Chorak, and a third inmate were playing cards together, Davis accused Chorak of cheating. Without warning, Chorak attacked Davis, punching him in the face. Davis was hospitalized for his injuries, ultimately losing vision in his left eye.

Davis filed a complaint in federal court and consented to have his case assigned to a magistrate judge. He sued Chorak for assault and battery under Michigan law; he sued Deputies Scavarda and Tooker under 42 U.S.C. § 1983 for failing to protect him from Chorak's attack; and he sued Eaton County under § 1983 for failing to adequately train and supervise the deputies.

The deputies and Eaton County moved to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The court granted the motion, relying in part on Davis's and Chorak's state-court criminal dockets and videos of their fight. It then declined to exercise supplemental jurisdiction over Davis's state-law claim against Chorak, dismissing it without prejudice. Davis timely appealed.

II.

Davis first argues that the district court erred by considering material outside of the pleadings at the motion-to-dismiss stage. We disagree.

A district court should generally consider only the pleadings when ruling on a motion to dismiss. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). If the court must consider "material outside the pleadings," it should treat the motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 56. *Id.*

That said, the complaint isn't the only record "considered part of the pleadings." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quotation omitted). At the motion-to-dismiss stage, a district court may also consider "exhibits attached to the complaint, public records, items appearing in the record of the case," *Rondigo*, 641 F.3d at 680–81 (cleaned up), and materials "appropriate for the taking of judicial notice," *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). It may also review "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo*, 641 F.3d at 681 (quoting *Bassett v. Nat'l Coll. Athl. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). And in qualified-immunity cases—to facilitate speedy resolution and protect officers from suit—courts may also examine video evidence while resolving a motion to dismiss. *See Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022).

Here, everything the district court considered was fair game. First, the court properly took judicial notice of the dockets in Davis's cases to determine the date on which he pled guilty. That's no problem. *See New Eng. Health*, 336 F.3d at 501. Second, the court considered two videos: one was of Chorak's attack on Davis, and the other was a recording of an interview with Davis about the assault. That's no problem either, especially since neither party disputes any of the facts

in the videos. *See Bell*, 37 F.4th at 364. And even if the court erred in considering them, any error would've been harmless because the court made clear that the videos were "not critical to [its] determination." R. 24, Pg. ID 282.

Thus, the court only considered materials that were "part of the pleadings," and it wasn't required to convert defendants' motion to one for summary judgment.[1]

III.

Davis next argues that on July 2, 2020, he was a pretrial detainee—not a convicted prisoner. This distinction matters because while the Fourteenth Amendment protects pretrial detainees, the Eighth Amendment protects convicted prisoners. *Greene v. Crawford County*, 22 F.4th 593, 605–07 (6th Cir. 2022). And under our caselaw, what violates the Fourteenth Amendment doesn't necessarily violate the Eighth Amendment. *Id.*; *see also Westmoreland v. Butler County*, 29 F.4th 721, 729 (6th Cir. 2022). Indeed, pretrial detainees receive different protections because, unlike convicted prisoners, they have "not been adjudged guilty of any crime." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979).

So Davis's status as a pretrial detainee or convicted prisoner determines how we analyze his failure-to-protect claim. If Davis is a convicted prisoner, he must plausibly allege that "(1) objectively, he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the official[s] acted with deliberate indifference to [Davis's] safety, meaning the official[s were] subjectively aware of the risk and failed to take reasonable measures to abate it." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (cleaned up). In other words, to show an Eighth Amendment violation, he must satisfy a test with "both an objective and a subjective prong."

---

[1] To the extent Davis claims a Seventh Amendment violation, that argument also fails. As Davis himself admits, "dismissal imposed after proper use of Rule 12 . . . does not violate the Seventh Amendment." Appellant Br. at 9. Because the district court properly dismissed the case under Rule 12, there was no Seventh Amendment violation.

*Westmoreland*, 29 F.4th at 728. If Davis is a pretrial detainee, however, circuit precedent dictates that he need only make "an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly." *Id.* (citing *Brawner v. Scott County*, 14 F.4th 585, 596 (6th Cir. 2021)).

In short, both tests incorporate an objective prong. And because Davis can't make an objective showing, he fails under either test.

IV.

Let's give Davis the benefit of the doubt and assume he was a pretrial detainee. That means only an objective showing is required. Even so, Davis failed to plausibly allege his claims against the deputies and Eaton County.

A.

Under our caselaw, a pretrial detainee bringing a failure-to-protect claim against an individual officer must satisfy a four-part test to show a violation of the Fourteenth Amendment. First, the detainee must plausibly allege that: (1) the officer "made an intentional decision with respect to the conditions under which the plaintiff was confined;" (2) "[t]hose conditions put the plaintiff at substantial risk of suffering serious harm;" (3) the officer failed to "take reasonable available measures to abate that risk;" and (4) by failing to take such measures, the officer "caused the plaintiff's injuries." *Id.* at 729.

On the first element, Davis plausibly alleged that Deputies Tooker and Scavarda made intentional security-classification decisions. Indeed, the parties agree that Davis satisfied this aspect of the test.

On the remaining elements, however, Davis's allegations fall short. Turning to the second element, Davis failed to plausibly allege that the deputies' security-classification decision put him

"at substantial risk of suffering serious harm." *Id.* Although he asserts that Chorak's criminal history and prior behavioral problems created a general security risk, Davis failed to allege facts suggesting he was personally at "substantial risk of assault." *Id.* Instead, Davis acknowledges that he had been housed with Chorak for two months without any incident at all. And he expressly alleges that Chorak's attack was "without warning." R. 1, Pg. ID 3. So Davis fails to demonstrate a "substantial risk" that Chorak would attack him. And of course, identifying such a risk is a prerequisite to showing the deputies failed to "take reasonable available measures to abate that risk" (the third element), and thereby "caused the plaintiff's injuries" (the fourth). *Westmoreland*, 29 F.4th at 729.

Because Davis failed to allege that Deputies Tooker and Scavarda violated the Fourteenth Amendment, he necessarily fails the Eighth Amendment's more demanding test as well. Since Davis doesn't allege a constitutional violation, the deputies are entitled to qualified immunity, and the district court properly granted their motion to dismiss. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (quotation omitted)); *Bell*, 37 F.4th at 364 (highlighting importance of vindicating officers' entitlement to qualified immunity "at the earliest possible stage" of litigation).

## B.

Davis also sued Eaton County, alleging that the County failed to train and supervise Deputies Tooker and Scavarda on proper security-classification procedures. He brought that claim under *Monell v. Department of Social Services*, which held that a municipality is liable for the constitutional violations of its employees if those violations resulted from an official policy or custom. *See* 436 U.S. 658, 694–95 (1978). But "[t]here can be no liability under *Monell* without

an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Because Davis has not plausibly alleged that the deputies violated the Constitution, his *Monell* claim must also fail.

*    *    *

We affirm.