NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0164n.06

No. 22-1517

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 12, 2023
DEBORAH S. HUNT, Clerk

EUGENE HABICH,

    Plaintiff-Appellant,

v.

WAYNE COUNTY, MICHIGAN; CHRISTOPHER
MITTLESTAT,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: BATCHELDER, GRIFFIN, and READLER, Circuit Judges.

GRIFFIN, Circuit Judge.

In this 42 U.S.C. § 1983 action, plaintiff Eugene Habich appeals the district court's grant of summary judgment in favor of defendants Wayne County and Christopher Mittlestat based upon qualified immunity. We affirm.

I.

Wayne County Sheriff's Deputy Paul Spaulding observed what appeared to be an unmarked police vehicle—a Dodge Charger—flash its police-style lights at him; it then drove away after Spaulding showed his badge to the driver. Spaulding called dispatch about the incident and learned that the Charger was not licensed with any law enforcement agency. This prompted an investigation and, two days later, Sheriff's Deputy John Wojciechowski located the Charger parked in a driveway, visible from and facing the street. Specifically, the Charger was parked even

with the front of the house, about three or four feet from the house's side. The Charger's police-style pushbar and lights were clearly visible from the street.

Deputy Wojciechowski and defendant Deputy Christopher Mittlestat (who arrived as a backup) approached the driveway where Habich was working on another vehicle parked behind the Charger. Habich admitted to them that he flashed the Charger's police-style lights at a vehicle on the highway. While the deputies talked with Habich, Mittlestat walked between the Charger and the house to the Charger's rear and confirmed the Charger's license plate matched the one Spaulding saw. The house did not have a front door, so Mittlestat's route took him near the main door on the side of the house accessible from the driveway near the Charger. The deputies then impounded the Charger without a warrant and "held" it "for investigative purposes."

Habich sued Wayne County, Mittlestat, and Wojciechowski,[1] alleging that they violated his Fourth and Fourteenth Amendment rights by searching and seizing the Charger without a warrant. The district court concluded that the Charger was outside the curtilage of the home and in plain view, which permitted its search and seizure without a warrant, and therefore granted summary judgment in defendants' favor. Habich appeals.

## II.

Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). It is not a "mere defense to liability"; the doctrine provides "*immunity from suit*." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). This immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731,

---

[1]Wojciechowski died during this litigation and is not a party to this appeal.

743 (2011) (internal quotation marks omitted). A "plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011). With this burden in mind, "a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation omitted).

The focus of this appeal is Mittlestat's seizure of the Charger. The district court concluded that Habich failed to demonstrate a violation of a constitutional right, which we review de novo. *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 871 (6th Cir. 2012). But we need not decide whether Mittlestat unconstitutionally seized the Charger because Habich has not shown that Mittlestat violated a clearly established right when he did so. Although the district court did not consider this issue, we may do so because we "can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 877 (6th Cir. 2020) (citation omitted).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam) (internal quotation marks omitted). A clearly established right must be anchored in "existing precedent [that] . . . place[s] the . . . question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (citation omitted). The Supreme Court has emphasized that when determining whether a right is clearly established, courts may not rely on "broad general proposition[s]" and instead must conduct the inquiry "in light of the specific context of the case." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (citation omitted). Put differently, "[t]he dispositive question is whether the violative nature of

*particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (internal quotation marks omitted).

The obligation for a plaintiff seeking to defeat an assertion of qualified immunity to "identify a case that put [the officer] on notice that his specific conduct was unlawful" is "especially important in the Fourth Amendment context." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) (citation omitted). This is because "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12 (citation omitted). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what [the] defendant is doing violates federal law *in the circumstances*." *Saylor v. Bd. of Educ. of Harlan Cnty.*, 118 F.3d 507, 515 (6th Cir. 1997) (citation omitted). That is, the plaintiff must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White*, 580 U.S. at 79. And that case must a published one. *See Bell v. City of Southfield*, 37 F.4th 362, 367–68 (6th Cir. 2022).

Habich directs our attention to *Florida v. Jardines*, 569 U.S. 1 (2013), and *Morgan v. Fairfield Cnty.*, 903 F.3d 553 (6th Cir. 2018), to meet his burden. But neither case shows that Mittlestat violated a clearly established right when he seized the Charger.

In *Jardines*, the Supreme Court held that bringing a drug-sniffing dog on the defendant's front porch without a warrant violated the Fourth Amendment. 569 U.S. at 11–12. A front porch, the Court concluded, was a "classic exemplar" of the curtilage. *Id.* at 7. *Morgan* similarly involved curtilage: the sides of a house and a backyard not visible to neighbors or from the road. 903 F.3d at 558, 561–62. But we deal here not with a front porch (Habich's house does not have one) or

hidden-from-view curtilage. Rather, Mittlestat and the Charger were both on the driveway, which, depending on the driveway's particularities, has been viewed as outside the curtilage. *See, e.g.*, *United States v. Coleman*, 923 F.3d 450, 455–56 (6th Cir. 2019); *United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir. 2011). The location of the searches in *Jardines* and *Morgan* are thus too different to place Mittlestat's actions beyond debate. And neither case involved the seizure of a vehicle, let alone one in a driveway; so they too do not clearly establish Mittlestat's conduct fell outside the plain-view doctrine.

Accordingly, Mittlestat is entitled to qualified immunity.

## III.

Two more final points are in order. First, Habich failed to address Wayne County's liability on appeal, rendering his claims against the county abandoned. *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014). And second, because we resolve this case on qualified-immunity grounds, we dismiss as moot defendants' motions to take judicial notice of Habich's pleas of nolo contendere in Michigan state court for conduct relating to his use of the Charger.

## IV.

For these reasons, we affirm the judgment of the district court and dismiss as moot defendants' motions to take judicial notice.