NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0295n.06

Case No. 22-5699

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**FILED**

Jun 26, 2023

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| APRIL HEARD; DERRICKIA HEARD, | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MONIQUE THOMAS, | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: BATCHELDER, GRIFFIN, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** The parties do not agree on much. But they do agree that this case was set in motion when two high school students bumped into each other in the school cafeteria. And all agree that these events culminated in a school resource officer's striking one of the students.

Litigation ensued. The student subjected to the blow brought various civil rights claims against the officer. Following discovery, the officer asserted qualified immunity through a motion for summary judgment. The two claims for which the officer was denied immunity are now before us. One is based on the Fourth Amendment's prohibition against an officer's using excessive force. The other is based on the Fourteenth Amendment's hazy guarantee of substantive due process. Because factual issues permeate this she-said/she-said dispute, our standard of review largely settles the appeal. We affirm the denial of qualified immunity on the student's Fourth

Amendment claim and reverse the denial of qualified immunity on her Fourteenth Amendment claim.

## I.

This dispute traces back to an argument between two Kirby High School students. One of them, Derrickia Heard, refused to loan her jacket to another student, seemingly causing a rift between the two. Tensions eventually lulled, but not for long. A few days later, the two bumped into each other in the school cafeteria. Heard recalls the "bump" as simply an accident. But the other student believed there was more to the matter. So she asked Monique Thomas, a school resource officer stationed in the lunchroom, to address the situation. Thomas remembers the student reporting that Heard had "assaulted" her. But what the student actually said, Heard alleges, is that her classmate asked Thomas to "come and get this bitch," referring to Heard.

Thomas approached Heard. Words were exchanged. Heard then left the cafeteria and entered the hallway. Thomas followed. Coach Charles Frank, a gym teacher, happened to be standing in the hallway. Frank recalls hearing Heard use profanity. To help calm the waters, Frank asked Heard to enter a room off the hallway. Heard did so, as did Frank and Thomas.

What happened next? Thomas says that Heard began to take off her jacket and threatened to "whip [Thomas's] ass." Then, Thomas says, Heard "swung" at Thomas, so Thomas hit Heard with a closed fist. But according to Heard, she did not remove her jacket or threaten anyone. Instead, Heard remembers, Thomas "bum rushed" her into the corner and punched her in the mouth so hard that her head hit the wall. At that point, all agree that Thomas left the room.

The police were called. When officers arrived, Heard was served a juvenile summons for assault (which was later dismissed). Heard was then taken to the hospital to have her lip stitched.

Heard sued Thomas under 42 U.S.C. § 1983. At issue here are two of her claims: an alleged violation of Heard's Fourth Amendment right to be free from excessive force and her Fourteenth Amendment right to substantive due process. The district court denied Thomas's motion for summary judgment based on qualified immunity as to both. Thomas appealed in a timely fashion.

## II.

The principles governing interlocutory appeals in qualified immunity cases are familiar. In this setting, we are largely constrained to answering legal questions. That is, we may review only the district court's legal determination that the facts, viewed in the light most favorable to Heard, support a constitutional violation and, in addition, whether that right was clearly established. *Colson v. City of Alcoa*, 37 F.4th 1182, 1186 (6th Cir. 2022). When it comes to the underlying facts, our review is generally limited to probing whether any factual allegations are blatantly contradicted by the record. *Bell v. City of Southfield*, 37 F.4th 362, 365 (6th Cir. 2022). To the extent an appeal veers into a prohibited inquiry into a purely factual dispute, we assume facts in favor of the appellee and review any legal questions with those accepted facts de novo. *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015).

As to the substantive legal question we review, we ask whether the facts viewed in the light most favorable to Heard support the conclusion that Thomas violated the Constitution. *Colson*, 37 F.4th at 1186. We also consider whether the law was clearly established when the event occurred, such that a reasonable officer would have known that her conduct was forbidden. *Id.* Thomas only needs to prevail on one prong to be entitled to qualified immunity. *Id.* at 1189.

A. Begin with a threshold inquiry: is Thomas best characterized as a school administrator or a police officer? That matters for determining the constitutional lens through which we view

3

Heard's claims. Our court analyzes excessive force claims leveled against teachers under the substantive due process rubric. *See, e.g.*, *Webb v. McCullough*, 828 F.2d 1151, 1158–59 (6th Cir. 1987); *see also Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). *But see Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (explaining that the Fourth Amendment will in most instances govern a § 1983 excessive force claim). For claims brought against officers, the Fourth Amendment controls. *Neague v. Cynkar*, 258 F.3d 504, 506–07 (6th Cir. 2001); *Williams v. Morgan*, 652 F. App'x 365, 367, 374 (6th Cir. 2006).

Before the district court, the parties agreed that Thomas was an officer and, as such, asked the district court to consider Heard's claim as one for excessive force under the Fourth Amendment, applying the objective test from *Graham* to resolve Heard's claim. 490 U.S. at 396. The district court, however, viewed Thomas as akin to a "teacher" or "school administrator" and, accordingly, applied a different legal test. It seems the parties had the right instincts. Thomas graduated from the Police Academy, attended thirteen weeks of Memphis Police Department training for school resource officers, and described herself as a police officer, all quintessential hallmarks of law enforcement. As a result, the *Graham* test governs whether Thomas's conduct violated the Fourth Amendment. 490 U.S. at 396; *see also E.W. v. Detroit Pub. Sch. Dist.*, No. 20-1790, 2022 WL 837496, at *1, *3 (6th Cir. Mar. 21, 2022) (applying *Graham* to analyze an excessive force claim brought against a school resource officer); *Williams*, 652 F. App'x at 367, 374 (same).

B. In effectuating a seizure, an officer violates the Fourth Amendment when her use of force is "objectively [un]reasonable" based on the totality of the circumstances. *Graham,* 490 U.S. at 397. The test for determining when an act is objectively reasonable is "not capable of precise definition." *Id.* at 396 (citation omitted). In the absence of precision, we turn to three general

factors to guide our reasonableness inquiry: (1) the severity of the crime at issue, (2) whether Heard posed an immediate threat to the safety of Thomas or others, and (3) whether Heard was actively resisting. *See id.* (citation omitted).

Under Heard's version of events and without record evidence blatantly contradicting her account, all three indicators that would support the use of force are missing. According to Heard, there was no crime at all. Rather, her classmate asked Thomas to "come and get" Heard after the two accidentally bumped into each other. Likewise, says Heard, she posed no threat. While inside the room off the hallway, she merely yelled for her mother. Finally, as Heard tells it, there was no active resistance on her part—she was complying with instructions when Thomas "bum rushed" her into the corner and struck her. This suggests that Thomas used unreasonable force, in violation of the Fourth Amendment. *See E.W.*, 2022 WL 837496, at *4; *Williams*, 652 F. App'x at 374.

With a constitutional violation shown, we ask whether the law was clearly established, so much so that a reasonable officer would have known that, under the circumstances she faced, her actions were unconstitutional. *See Bell*, 37 F.4th at 367. In defining the right at issue, exactness is paramount. The "unlawfulness of the officer's acts must be so well defined that no reasonable officer would doubt it." *Id.* (internal quotation marks omitted). Here, that demanding standard is met. Where an officer encounters an individual suspected of no crime, posing no threat to the officer, offering no resistance, and otherwise presenting no concerning circumstances, the officer may not act pugnaciously in confronting the individual. *See Gambrel v. Knox County*, 25 F.4th 391, 403 (6th Cir. 2022). Adding all of this together, Heard has overcome Thomas's assertion of qualified immunity.

Thomas resists this conclusion. She first contends that the record does not support a constitutional violation. But by and large, Thomas's refrain is simply a recasting of the facts in a friendlier light. At trial, those facts may compel a verdict in Thomas's favor. At this stage, however, we are bound to view the facts in the light most favorable to Heard. *Colson*, 37 F.4th at 1186.

Nor more availing is Thomas's assertion that her actions were not clearly established as improper. To her mind, she had no forewarning that it would be impermissible to punch a student who was neither suspected of a crime, threatening anyone, nor resisting an officer's command. But in articulating her reading of the relevant case law, Thomas emphasizes cherry-picked facts that are neither material nor parallel to the sequence of events at issue here. *See Gambrel*, 25 F.4th at 403 ("[T]he unlawfulness of the Officer['s] alleged [punch] (as recounted by [Heard]) would follow immediately from the conclusion that the rule was firmly established.") (internal quotation marks and original brackets omitted). All things considered, Heard carried her burden to defeat Thomas's invocation of qualified immunity.

C. That leaves Heard's substantive due process claim, which, like her Fourth Amendment claim, rests upon Thomas's purported use of excessive force. On this claim, Thomas is entitled to qualified immunity because Heard has failed to allege facts supporting a separate substantive due process claim. Heard's excessive force claim, as just explained, is covered by the Fourth Amendment. And when a constitutional claim is addressed by a more precise constitutional provision, the claim must be analyzed under that provision, not under fuzzier substantive due process standards. *Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020); *see also Graham*, 490 U.S. at 395; *cf. Handy-Clay v. City of Memphi*s, 695 F.3d 531, 548 (6th Cir. 2012) ("Because there is . . . an enumerated constitutional right . . . available as a source of protection" the litigant "has

6

failed to allege sufficient facts to support a substantive due process claim.") (internal quotation marks omitted and second alteration in original).

\* \* \* \* \*

We affirm in part and reverse in part.