NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0499n.06

Case No. 25-3202

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CHRISTOPHER HICKS, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| KATHLEEN CROWLEY, Executive Director; DAVID R. HARBARGER, Chair; JASMINE CLEMENTS, Vice Chair; JEFFREY CASWELL, Member; OHIO BOARD OF TAX APPEALS, | ) ) ) ) ) ) | OPINION |
| Defendants-Appellants. | ) ) | |

Before: COLE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** When Christopher Hicks disrupted three hearings at the Ohio Board of Tax Appeals, the Board indefinitely banned him from attending other people's hearings. So Hicks sued the Board, its director, and its three members, arguing that the ban violated his clearly established constitutional rights. The district court sided with Hicks. Now the director and the Board members appeal, contending that Hicks's rights weren't definite enough to overcome qualified immunity. We agree, so we reverse.

## I.

The Ohio Board of Tax Appeals resolves disputes involving state tax law. *See* Ohio Rev. Code § 5703.02. The Board allows members of the public to attend its hearings, but it makes them follow certain rules. These rules forbid attendees from recording adjudicatory hearings, because

some hearings include private information. Instead, attendees can take notes, request a proceeding's audio, or request a transcript.[1]

On October 20th, 2021, Christopher Hicks attended a Board hearing as a party. He brought a video camera, set it up, and started recording. The presiding hearing officer asked Hicks to stop recording, and Hicks refused. So the officer canceled the hearing. And the Board never rescheduled it.

A month later, Hicks told the Board's Executive Director, Kathleen Crowley, that he planned to attend and record the Board's December 2nd hearings—this time as a member of the public. As promised, Hicks showed up on December 2nd and he approached the hearing room. So a Board employee stopped him, and two Highway Patrol Troopers escorted him to the Board's offices. There, Crowley told Hicks that the day's hearings were virtual, not in-person. Hicks asked how he could join the call, and Crowley told him to call the Board. Hicks then called the Board, received instructions on joining the call, and tried to call-in from the office's waiting room. But Crowley and a Patrol Trooper told Hicks to leave, threatening him with arrest. This delayed Hicks from accessing the hearings. And when Hicks finally joined the call, he told the group that he was recording. A Board employee explained the rule against recording, but Hicks refused to stop. So the Board employee canceled the meeting.

Then, Hicks eyed the Board's December 6th hearings. He confirmed that the hearings would be in-person. Then he created his own recording-request forms for each scheduled case, and he emailed them to Crowley. Crowley didn't respond until the morning of December 6th.

---

[1] The Board conducts two basic kinds of meetings. There are nonadjudicatory "business" meetings that don't involve specific disputes between parties. And there are adjudicatory hearings that involve specific tax disputes. The latter are at issue in this case. Both kinds of meetings are generally open to the public, but they're governed by separate Board rules.

A few minutes later, Hicks entered an ongoing Board hearing and walked toward the seating area. The hearing officer saw Hicks and stated the rule against recording. The parties disagree about what happened next. Hicks says he "calmly asked for clarification as to the basis of the hearing officer's decision." The hearing officer, Kody Teaford, says Hicks disruptively approached the bench and began waving the recording-request forms.

The transcript supports Teaford's story. Teaford told Hicks to step away from the bench three times, and Hicks continued to protest. Teaford said "I'm in the middle of a hearing and you're interrupting it. You may not record." Hicks replied "You're interrupting yourself. I'm just coming in as a citizen." Then Teaford asked two State Patrol Troopers to remove Hicks for failing to comply with the court's order. Hicks kept protesting, but he eventually left the room with the Troopers. The Board took a recess.

Three days later, the Board indefinitely banned Hicks from attending its adjudicatory hearings as a member of the public. The ban's title read "NOTICE OF BAN FROM THE PREMISES," but the ban's text was less extreme. It banned Hicks from hearings, not meetings. And even then, it clarified that Hicks could still attend hearings as a party. Hicks tried to fight the ban, but he received no response.

So Hicks filed this lawsuit. He sued the Board's Executive Director, Chair, Vice Chair, the third member (together, the "Board officials"), and the Board itself. Hicks alleged § 1983 claims that the Board and its officials violated his First and Fourteenth Amendment rights by limiting his access to attend and record the hearings, banning him without due process, and retaliating against his protected speech. So Hicks challenged both the Board's pre-December 9th actions and its December 9th prospective, permanent ban. The district court granted Hicks a preliminary injunction to prevent enforcement of the ban.

Hicks then moved for summary judgment on all claims. And the Board and its members moved for partial summary judgment. The district court issued a split ruling. The court dismissed the Board as a defendant because the Board isn't a "person" under § 1983. Then it granted summary judgment to the three Board members on everything except the ban. It held that the Board members didn't violate Hicks's First Amendment rights when they (1) kicked him out of the December meetings, (2) prohibited him from recording, and (3) punished him for recording. But the court sided with Hicks on the permanent ban under both his First and Fourteenth Amendment theories. It specifically rejected the four Board officials' qualified-immunity defense, thus subjecting them to possible money damages in their personal capacities. So the Board officials appealed.

## II.

We review the district court's decision de novo. *See Helphenstine v. Lewis County*, 60 F.4th 305, 314 (6th Cir. 2023); *Heeter v. Bowers*, 99 F.4th 900, 908 (6th Cir. 2024). We "view all evidence and draw all reasonable inferences in the light most favorable to" the Board officials. *Novak v. Federspiel*, 140 F.4th 815, 820 (6th Cir. 2025). And Hicks bears the burden to show that qualified immunity doesn't apply. *See Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022).

The case presents a narrow question. Qualified immunity shields the Board officials from liability unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (internal quotation marks omitted). The parties don't ask us to consider whether the officials violated Hicks's rights. Instead, the parties only dispute the second prong, where the district court found that the unlawfulness of the Board officials' conduct was clearly

established on December 9th, 2021. So we only consider whether Hicks proved that the ban's unlawfulness was clearly established at that time. *Bell*, 37 F.4th at 367. He didn't.

**A.**

For Hicks to win, he must "point[] to either 'controlling authority' or 'a robust consensus of cases of persuasive authority'" that the ban violated the law. *Hidden Vill., LLC v. City of Lakewood*, 734 F.3d 519, 529 (6th Cir. 2013) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741–42 (2011)). These cases must have "placed the . . . constitutional question beyond debate" when the Board issued the ban. *Al-Kidd*, 563 U.S. at 741. And the precedent "must be clear enough that every reasonable official would [have] interpret[ed] it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63. This is a high bar.

**B.**

Hicks falls short. First, he can't point to any controlling authority. He doesn't cite a single case that would bind a Sixth Circuit panel, and the district court doesn't either. Instead, they point to seven decisions from different corners of the country. But six are district-court opinions, three of which are unpublished. And while two cases come from district courts within the Sixth Circuit, "district court opinions lack precedential force even vis-à-vis other judges in the same judicial district." *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025). The sole circuit-court opinion comes from the Second Circuit. So Hicks can't cite controlling authority that would clearly establish his rights.

Second, he also can't point to "a robust consensus of cases of persuasive authority." *Al-Kidd*, 563 U.S. at 742 (internal quotation marks omitted). In our circuit, "a mere handful of decisions of other circuit and district courts . . . cannot form the basis for a clearly established constitutional right[.]" *Ohio Civ. Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177–78 (6th Cir.

1988). Start with the district-court opinions, which have limited force. *See Trump*, 606 U.S. at 858 n.17. "Many Courts of Appeals . . . decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). That's especially true of *unpublished* district-court opinions, which "do not clearly establish anything." *Bell*, 37 F.4th at 368. And as for circuit-court holdings, we don't consider one or two out-of-circuit cases a "robust consensus of . . . persuasive authority" in our circuit. *See Stewart v. City of Euclid*, 970 F.3d 667, 674–75 (6th Cir. 2020); *Eugene D. ex rel. Olivia D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989).

So we find that Hicks's citations—three published district-court opinions from Michigan, Vermont, and Georgia; three unpublished district-court opinions from Kentucky, Indiana, and Florida; and one Second Circuit opinion—don't amount to much. They don't bind this circuit, and as persuasive authority, they don't reach a robust consensus that would "leave no doubt in the mind of a reasonable officer[.]" *Seiter*, 858 F.2d at 1177. The district court erred when it denied qualified immunity to the Board officials.

## C.

Even if Hicks's citations were enough to "clearly establish" certain legal rights, they don't come close to establishing the relevant right: Hicks's constitutional right to attend other peoples' quasi-judicial administrative tax hearings.

To determine whether members of the public have a right to access a proceeding, we ask "whether the proceeding . . . has 'historically been open to the press and the general public,' and . . . whether 'public access plays a significant positive role in the functioning of the particular process[.]'" *United States v. Kincaide*, 119 F.4th 1074, 1077–78 (6th Cir. 2024) (quoting *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 8 (1986)).

Hicks doesn't cite any decisions that come close to this showing on these facts. Instead, he cites decisions concerning school board meetings, the Kentucky state legislature, a Jacksonville city council meeting, and a New York courthouse. *See* Appellant Br., pp.iii–iv. These decisions have little to do with Hicks's purported right to access other peoples' quasi-judicial administrative hearings at the Ohio Board of Tax Appeals. And they certainly didn't place his rights "beyond debate" so that "every reasonable official would [have] interpret[ed] it to establish the particular rule [he] seeks to apply." *Wesby*, 583 U.S. at 63 (internal quotation marks omitted).

## III.

The district court shouldn't have granted summary judgment against the Board officials. The ban's unlawfulness wasn't clearly established on December 9th, 2021. We REVERSE.